LOCKWOOD CAREY & wife *vs.* THE BERKSHIRE RAILROAD COMPANY.

OLIVER SKINNER *vs.* THE HOUSATONIC RAILROAD CORPO- RATION.

An action on the case cannot be maintained by a widow, to recover damages for the loss of her husband, or by a father for the loss of service of his child, in conse- quence of the death of the husband or child, occasioned by the carelessness or fault of the agents or servants of a railroad corporation.

THE first of the above named actions was originally com- menced by Eliza Ann Hewins, then the widow of Joseph H. Hewins, and is now prosecuted in the joint names of herself and Lockwood Carey, with whom she has since intermarried. It was an action on the case, to recover damages for the loss of the life of the female plaintiff's late husband, in consequence of the negligence, carelessness, and unskilfulness of the defendants' servants and agents.

On the trial, which took place in the court of common pleas before *Wells*, C. J., at the October term, 1845, the plaintiff (Eliza Ann Hewins, then sole) offered to prove, among other things, that, on the day of the alleged injury, Hewins was employed by an agent of the defendants, with other laborers, to go on the defendants' road, southerly of the station at West

Stockbridge, as far as the north part of Great Barrington, to shovel snow from the track, in order that the trains might proceed; that he was employed as a day laborer, and to be paid by the day, and was not constantly employed by the company under any contract; that, on the day referred to, Hewins was engaged to clear snow from the track, until a car should be sent down to bring him and the other laborers back, and was directed to remain at work until he should be thus sent for; that this arrangement to bring back the laborers by the cars was made, in order that they might have a longer time to work; that, at evening, the cars were sent accordingly, and Hewins, and the other laborers, who were then at work several miles below, were taken on board the cars and brought back to the station at West Stockbridge; that, when the cars were approaching the station, and making arrangements to run into the place appropriated to them, they were, in consequence of the carelessness and inattention of the switch tender, directed towards and carried to the engine house, the doors of which were closed; that the cars ran against the doors of the engine house, stove them in pieces, and entered the house; that the engine was behind the cars, pushing or backing them up on the track and against the doors of the engine house; that the cars were open or freight cars, and Hewins was sitting on the floor of one of them; that the engineer, seeing the danger, directed those in the cars to clear themselves therefrom; that Hewins, before he could thus clear himself, was thrown from the car in consequence of its striking the door of the engine house; that, on being thrown off, he fell between the tender and the car, and was run over, and so severely injured and bruised, that he died of his wounds in eighteen or twenty hours afterwards; that Hewins's death was occasioned solely by the injuries so received; that he was the husband of the plaintiff, who was poor; and that, by his death, she was left to provide for herself and the support of three small children.

The judge being of opinion, that if the facts stated were proved, they would not entitle the plaintiff to recover, a

verdict was thereupon rendered for the defendants, and the plaintiff filed exceptions.

*H. W. Bishop*, for the plaintiffs.

*I. Sumner*, for the defendants.

The second of the above named actions was also an action on the case, brought by the plaintiff for the loss of service of his son, aged about eleven years, who was killed by the cars of the defendants on the 24th day of February, 1847.

At the trial, which was in this court, before *Dewey*, J., the plaintiff proposed to prove, in order to entitle himself to a verdict, that the death of his son was caused by an accident which took place on the defendants' railroad, by reason of the carelessness or fault of the servants and agents of the defendants.

The case was taken from the jury, by consent, and reserved for the consideration of the whole court, upon the report of the judge.

*J. Rockwell & H. Wheeler*, for the plaintiff.

*I. Sumner*, for the defendants.

These cases were separately argued, but, presenting a single question only, for the consideration of the court, they were both embraced in the same opinion.

METCALF, J.   These actions raise a new question in our jurisprudence.   No case was cited, at the argument, in which a like action had been the subject of adjudication, or even of discussion.   The case of *Huggins* v. *Butcher*, 1 Brownl. 205, and Yelv. 89, was referred to, where there is a *dictum* of Tanfield, J., in which Fenner and Yelverton, Js., are said to have concurred, that "if one beat the servant of J. S. so that he die of that beating, the master shall not have an action against the other, for the battery and loss of service, because the servant dying of the extremity of the beating, it is now become an offence against the crown, and turned into felony, and this hath drowned the particular offence, and prevails over the wrong done to the master, and his action by that is gone." This doctrine is also found in most of the digests and abridgments of the English law.   But whatever may be the mean-

ing or legal effect of the maxim, that a trespass is merged in a felony, it has no application to the cases now before us. In neither of them was the killing felonious, and there is, therefore, no felony, in which a private injury can merge.

If these actions, or either of them, can be maintained, it must be upon some established principle of the common law. And we might expect to find that principle applied in some adjudged case in the English books; as occasions for its application must have arisen in very many instances. At the least, we might expect to find the principle stated in some elementary treatise of approved authority. None such was cited by counsel; and we cannot find any. This is very strong evidence, though not conclusive, that such actions cannot be supported. But it is not necessary to rely entirely on this negative evidence. For we find it adjudged, in *Baker* v. *Bolton & others*, 1 Campb. 493, that the death of a human being is not the ground of an action for damages. In that case, the plaintiff brought an action against the proprietors of a stage coach, which was overturned while he and his wife were travelling in it, whereby he was much bruised, and his wife so severely hurt, that she died about a month after. The declaration alleged, besides other special damage, that "by means of the premises, the plaintiff had wholly lost and been deprived of the comfort, fellowship and assistance of his said wife, and had from thence hitherto suffered and undergone great grief, vexation and anguish of mind." Lord Ellenborough held, that the jury could take into consideration only the bruises which the plaintiff had sustained, and the loss of his wife's society, and the distress of mind he had suffered on her account, from the time of the accident to the time of her death. And he announced the principle of his decision, in these words: "In a civil court, the death of a human being cannot be complained of as an injury." Such, then, we cannot doubt, is the doctrine of the common law; and it is decisive against the maintenance of these actions.

We are aware of the case of *Ford* v. *Monroe*, 20 Wend. 210, in which the plaintiff, in an action tried before Cowen, J.,

recovered damages for the negligence of the defendant's servant, in driving a carriage over the plaintiff's son, ten years old, and thereby killing him. One ground of damage, alleged in the declaration, was the loss of the son's service for the period of eleven years; and the jury were instructed, that the plaintiff was entitled to recover such sum as the service of the son would have been worth, until he became twenty-one years of age. The case went before the whole court on a motion for a new trial; but no question was there raised, concerning the legal right of the plaintiff to recover damages caused by the killing of his son. For aught that appears in the report, that point was assumed, and passed *sub silentio*, both at the trial and in bank.

The English parliament, by a very recent statute, (9 and 10 Vict. *c.* 93,) have provided, that whenever the death of a person shall be caused by a wrongful act, neglect or default, which would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect tnereof, the person, who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured shall have been caused under such circumstances as amount in law to felony · such action to be brought within twelve calendar months after such death, by and in the name of the executor or administrator of the person deceased, and to be for the benefit of the wife, husband, parent and child of the persons whose death shall have been so caused; and in such action the jury may give such damages, as they may think proportioned to the injury, resulting from such death, to the parties, respectively, for whose use such action shall be brought. And by our *St.* of 1840, *c.* 80, if the life of any passenger shall be lost by the negligence or carelessness of the proprietors of a railroad, steamboat, stage coach, &c., or of their servants or agents, such proprietors shall be liable to a fine, not exceeding five thousand dollars, nor less than five hundred dollars, to be recovered by indictment, to the use of the executor or administrator of the deceased person, for the benefit of his widow and heirs

These statutes are framed on different principles, and for different ends. The English statute gives damages, as such, and proportioned to the injury, to the husband or wife, parents and children, of any person whose death is caused by the wrongful act, neglect or default of another person; adopting, to this extent, the principle on which it has been attempted to support the present actions. Our statute is confined to the death of passengers carried by certain enumerated modes of conveyance. A limited penalty is imposed, as a punishment of carelessness in common carriers. And as this penalty is to be recovered by indictment, it is doubtless to be greater or smaller, within the prescribed maximum and minimum, according to the degree of blame which attaches to the defendants, and not according to the loss sustained by the widow and heirs of the deceased. The penalty, when thus recovered, is conferred on the widow and heirs, not as damages for their loss, but as a gratuity from the commonwealth.

We believe that by the civil law, and by the law of France and of Scotland, these actions might be maintained. If such a law would be expedient for us, it is for the legislature to make it.

In the first of these actions, the exceptions are overruled; in the second, the plaintiff is to be nonsuit.