262 S.W.2d 47 (1953)
STROUD
v.
MASEK et al.
No. 43299.
Supreme Court of Missouri. Division No. 2.
November 9, 1953.
Jim Poynor, Joplin, for appellant.
Watson, Richart & Titus, Ray E. Watson, F. H. Richart, Rex Titus, Joplin, for respondents.
TIPTON, Judge.
This is an action by the appellant for the wrongful death of her husband against respondent, *48 Jack Masek, as the driver of the tractor-trailer which was owned by respondent Frank Griner. At the close of appellant's evidence, the trial court directed a verdict for the respondent and gave as his reasons that "the Court finds as a matter of law that the proof of specific negligence in the petition was not sustained and furthermore that there is a total lack of pecuniary loss."
Briefly, the appellant's evidence tended to show that on August 15, 1951, a tractor-trailer was driven north in an alley between Virginia Avenue and Main Street in the city of Joplin, Missouri, by respondent Jack Masek. He attempted to get the rear of the trailer close to a building called Hadley's Lockers, located on the west side of the alley, and while backing the tractor-trailer it "jack-knifed," striking the front end of a house trailer and causing it to be moved from its foundation. The house trailer was 12 to 15 feet from the alley. Respondents' exhibit number 4 is a picture showing this part of the alley and the buildings in that vicinity. The house trailer was located on the opposite side of the alley from the Hadley's Lockers building.
The appellant and her deceased husband lived in this house trailer. The deceased had been suffering from high blood pressure and from a heart impairment for many years. He had been bedfast for many months and at the time in question he was in bed at the rear of the house trailer. When the house trailer was struck by the tractor-trailer, various objects were knocked from the shelves and fell on the deceased's head, face and arms, causing him to become very frightened and nervous. The next day he became unable to talk and he died August 24, 1951.
Dr. John W. Koehler testified that, considering the physical condition of the deceased, it was his opinion that the accident so excited the deceased that there was a resulting rise in his blood pressure which was of sufficient magnitude to cause a cerebral accident with a hemorrhage that caused his death.
The only income that deceased had was a pension of $50 a month paid by the state for permanent and total disability. Other material facts will be stated in the course of this opinion.
Appellant's amended petition states that the house trailer was on a foundation located on the southwest corner of the lot at 102 Virginia Avenue in the city of Joplin, next to an alley located between Main Street and Virginia Avenue, and that the respondent Jack Masek drove in the alley in a Northerly direction to First Street. It further states that this respondent while "acting within the course of his employment, negligently and carelessly, and failing to exercise the highest degree of care, did cause the motor vehicle to reverse its direction and proceed backwards in a Southerly direction, and by turning the wheels of said vehicle the said Jack Masek did hit and ram said house trailer owned and occupied by the plaintiff and her now deceased husband with great force and violence, causing said house trailer to be knocked from its foundation and throwing the occupants of said house trailer with great force and violence in and around the interior of said trailer. Plaintiff states that as a direct and proximate cause of the negligence and carelessness of the said motor vehicle striking said house trailer" the deceased suffered a shock and excitement which aggravated his pre-existing physical condition and as a result thereof he died on August 24, 1951.
Under the case of Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914, and the many cases cited therein, we are of the opinion that the above quoted part of appellant's amended petition stated about as specific an averment as could be stated in a petition.
In the Jones case, supra, the "plaintiff's petition alleged that, at said time and place, while plaintiff was driving on the right (west) side of the highway", defendant * * *" carelessly and negligently drove and operated said truck (defendant's transport truck) and carelessly and negligently caused, *49 allowed and permitted the same to run into, strike and into collision with the rear end of the motor vehicle of plaintiff with such great force and violence,' etc., causing plaintiff to be injured." 164 S.W.2d loc.cit. 915.
In ruling the Jones case, we said:
"Defendant says that plaintiff's evidence tends to show (1) failure on the part of the driver of defendant's truck to keep a lookout; (2) failure to `sound his signaling device' when he overtook plaintiff's truck and desired to pass in violation of Section 8385(e), R.S.1939, Mo.R.S.A. § 8385(e) [V.A.M.S. 304.020]; (3) excessive speed; (4) failure to pass on the left of plaintiff's truck in violation of Section 8385(e), R.S.1939, Mo.R.S.A. § 8385(e); and (5) failure to slacken speed, swerve or divert the course of its truck; and that plaintiff should have submitted one of these. Except for excessive speed (which certainly did not appear per se), these are all matters of omission. While no doubt there was at least circumstantial evidence sufficient to authorize the submission of any of these, this should not preclude plaintiff from submitting instead an act of commission, also warranted by the evidence. It seems clear that this is what plaintiff was attempting to do. * * *
"There are some acts which result in damage that are so simple and out of the ordinary course of events that to merely state the ultimate facts is about as specific an averment as can be framed into language.' Monan v. Arkansas Grocer Co., 216 Mo.App. 289, 264 S.W. 486, 487, where an instruction in the language of the petition was held good in a collision case. Here the ultimate fact, `negligently caused' the transport truck `to run into * * * the rear end of the pickup truck,' is no doubt stated in a way that would be too general if it stood alone. But when the requirements are added that it must be further found that the transport truck was being driven behind plaintiff's car, and that his car was `west of the center line' when struck, then a rather narrow and simple issue was presented. This was: Did defendant's driver run its truck into the rear end of plaintiff's car while plaintiff's car was being properly driven in the part of the highway where it should have been and was entitled to be? This meant: Did defendant's driver so carelessly guide its truck that he drove it against the rear end of plaintiff's car, in attempting to drive around it as he said he intended to do? Surely this was an issue which the jury could understand as well as excessive speed or any of the matters of omission suggested as submissible by defendant. (Quaere: Which is more specific? Defendant hit plaintiff on the nose, or, defendant failed, refused and neglected to keep his hands in his pockets and to prevent them from coming in contact with plaintiff's nose.)" 164 S.W.2d loc. cit. 917-918.
Another case very similar to the case at bar is Richardson v. Kansas City Railways Company, 288 Mo. 258, 231 S.W. 938. That case involved a collision of a streetcar with a truck ahead of it. In ruling that a petition similar to the amended petition in the case at bar was specific allegation of negligence, we said:
"The petition first charged that the injury to respondent was caused by the negligence of defendant. This general allegation was followed by numerous specifications of negligent things alleged to have been done. One specification was that appellant's employes `failed and neglected to run and operate said car in a manner that said car would be under such control that it would not be run into and against said automobile when they saw, or by the exercise of reasonable care could have seen, said automobile truck ahead of said car on said track and street.' There was evidence tending to support this allegation. It is a specification of negligence and was pleaded as such. The instruction required the jury, before finding *50 for respondent, to find: (1) That she was seated in an automobile truck (2) over which she had no control and (3) which was standing still upon appellant's track ahead of the car, and (4) that respondent was in danger of being struck if the car did not stop and continued on its course; (5) that said street car was so negligently operated, managed, or controlled by the motorman that it was negligently caused to be run into and strike the truck; (6) that the motorman negligently ran the car against the truck when he saw or in the exercise of ordinary care could have seen the truck on the track ahead of the car, and by the exercise of ordinary care could have stopped the car and have avoided striking the truck. These various findings were all required before a verdict for respondent was authorized by the instruction. The motorman was offered by appellant and testified he saw the car when he was more than 400 feet distant from the truck. It is true that instructions must be within the pleadings; that an allegation of general negligence is restricted by specifications of particular negligence; and that instructions, in such a case, must submit nothing outside the specific charges. In this case among the specifications of negligence which follow the general charge is that already quoted. That this allegation was in itself specific, and not a mere general charge of negligence, is shown by the decisions cited by respondent. Davidson v. [St. Louis] Transit Co., 211 Mo. [320], loc.cit. 361, 109 S.W. 583; Beier v. [St. Louis] Transit Co., 197 Mo. [215], loc.cit. 232, 233, 94 S.W. 876; Thompson v. [Keyes-Marshall Bros.] Livery Co., 214 Mo. [487], loc. cit. 490, et seq., 113 S.W. 1128. This allegation was fairly submitted to the jury by the assailed instruction." 231 S.W. loc.cit. 941. (Italics ours.)
The facts we have already stated tend to prove the allegations quoted from appellant's petition. Since the facts tend to prove these allegations, we hold a submissible case was made for the jury, as it is immaterial whether the tractor-trailer was backed into the house trailer "innocently, accidently, carelessly or with a heart "fatally bent on mischief." Houck v. L. A. Tucker Truck Lines, Mo.App., 131 S.W.2d 366, loc.cit. 371.
We are also of the opinion that the evidence was sufficient to make a submissible case of the allegation that respondent Masek failed to have and keep the tractor-trailer under control at all times. One of appellant's witnesses on cross-examination testified that the tractor-trailer was moving slowly and that the driver looked out of the cab only on the left side as he backed down the alley but that he did not look back or on the other side of the alley where the house trailer was located. He further testified that Masek was operating the tractor-trailer carefully. Of course, this last statement is a mere conclusion. Richardson v. Kansas City Railways Company, supra.
Respondents contend that there is no substantial proof that Masek was the driver of the tractor-trailer that backed into the house trailer on August 15, 1951, or that he was acting within the scope of his employment as an employe of the respondent Frank Griner.
Only two witnesses testified about the tractor-trailer's backing into the house trailer and both testified it was so dirty that they could not identify the truck; however, appellant did testify that she obtained the name of the driver and his number, that his name was Jack Masek and that his name and number were given to her by an officer who apparently was at the scene shortly after the accident occurred.
Respondents now contend that this evidence was hearsay and should not be considered. However, there was no objection made to this evidence, nor was there a motion to strike the same. Under these circumstances, this evidence must be taken for what it is worth. Laster v. R. & V. Motor Co., 219 Mo.App. 211, 269 S.W. 665; Reeves v. Thompson, 357 Mo. 847, 211 S.W. *51 2d 23. Respondents suggest that we should hold this evidence incompetent under our rule 3.27. Of course, this rule must be read in connection with our other rules. Not every reversible error comes within this rule. To come under this rule the error must be a plain error affecting substantial rights of the complaining party. The alleged hearsay evidence could have been obtained by calling the officer who obtained Masek's name and number, and there are other ways his name could have been obtained. We hold rule 3.27 is not applicable under these circumstances.
By interrogatories, respondent Frank Griner testified that on August 15, 1951, he owned a tractor and trailer and that on that date respondent Masek was in his employ and paid by him. At that time he had an oral contract to haul the products of Shapiro Fisheries, Inc., who gave the orders to Masek as to where deliveries were to be made. He further stated that Masek made an oral report of the accident in question on or about September 10, 1951. Since Masek was making a delivery to Hadley's Lockers, the jury could infer that the cargo was frozen fish belonging to Shapiro Fisheries, Inc. We hold that it was a question for the jury to say whether Masek was the driver and whether he was acting in the scope of his employment at the time in question. Giving the appellant the benefit of all the favorable evidence and all reasonable inferences to be drawn therefrom, we hold the appellant made a submissible case for the jury as to respondents' negligence.
Another reason that the trial court directed a verdict for respondents was that the evidence showed that there was a total lack of pecuniary loss suffered by appellant on account of the death of her husband. For the purpose of this opinion only, we will assume this to be true, yet we think the trial court erred because appellant would be entitled to at least nominal damages.
"According to the general current of American authority, where it appears in a statutory action for death that the death was caused by defendant's negligence, nominal damages may be recovered, although no actual pecuniary damage has been shown". 25 C.J.S., Death, § 96, page 1238.
The case of Wente v. Shaver, 350 Mo. 1143, 169 S.W.2d 947, loc.cit. 954, 145 A.L.R. 1176, was a wrongful death case. In that case we quoted with approval the following quotation in King v. City of St. Louis 250 Mo. 501, loc.cit. 513, 157 S.W. 498, loc.cit. 501:
"The rule is that for every actionable injury there is a corresponding right to damages, and such an injury arises whenever a legal right of plaintiff is violated. "If there is no inquiry as to actual damages, or none appears on inquiry, the legal implication of damages remains; * * * therefore nominal damages are given." Suth. on Dam. (3rd Ed.) § 9; 13 Cyc. 14."
Judgment for nominal damages is a substantial right since such a judgment decides the incident of costs. For that reason it may carry a reversal of a judgment that does not award nominal damages. Curd v. Reaban, Mo., 232 S.W.2d 389. Since we have already held that the evidence made a submissible case for the jury on the question of negligence we, therefore, hold that the case should be reversed and remanded for a new trial. It is so ordered.
All concur.