STATE of Missouri ex rel. KANSAS
CITY STOCK YARDS COMPANY
OF MAINE, Petitioner,

v.

Honorable Donald B. CLARK, Judge of
the Circuit Court of Jackson County,
Missouri, Respondent.

No. 59217.

Supreme Court of Missouri,
En Banc.

April 14, 1976.

Opinion Modified on Court's Own Motion.

Rehearing Denied May 5, 1976.

See also 536 S.W.2d 157.

Leonard A. O'Neal, Joe W. Coleman, Kansas City, for petitioner.

Albert J. Yonke and Michael C. Arnold, Kansas City, for respondent.

HOLMAN, Judge.

This is an original proceeding in prohibition in which relator seeks to prevent respondent judge from proceeding further in the case of *Peggy Ann Smith, et al. v. Kansas City Stock Yards Company of Maine* now pending in the Jackson County Circuit Court. Before seeking relief here relator had filed a motion to dismiss in which it stated as grounds therefor the contention hereinafter discussed. Respondent overruled that motion. Upon petition of relator we issued our provisional rule. We have decided that said rule should be made absolute.

The facts are not in dispute. Roy Ruis died on June 12, 1970, as a result of injuries received while employed by relator. He was survived by his wife and three minor children. Roy was also survived by his father and mother who are still alive at this time. Deceased had not made any contributions for the support of his parents for

twenty-five years prior to his death. On May 25, 1972, the widow and children (hereinafter referred to as plaintiffs) filed the aforementioned suit against relator. It is suggested that the delay in filing said suit may have resulted from the fact that said dependents unsuccessfully sought to recover compensation under the Kansas Workmen's Compensation Law.

It is relator's contention that plaintiffs have not stated and cannot state a claim for relief and hence the circuit court has no jurisdiction to proceed with the case. The basic question for our decision is whether plaintiffs can maintain the wrongful death action which was commenced more than one year but less than two years after decedent's death.

■ At the outset of our consideration of this contention it is appropriate to observe that under the circumstances indicated prohibition is a proper remedy. *State ex rel. Henderson v. Cook,* 353 Mo. 272, 182 S.W.2d 292[5] (1944).

There was no right of action for wrongful death at common law. It is only by virtue of statutory enactments that a recovery may be had upon such a claim. Our present statute reads as follows: "Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, which damages may be sued for and recovered.

"(1) By the spouse or minor children, natural or adopted, of the deceased, either jointly or severally; . . . and provided, further, that only one action may be brought under this subdivision against any one defendant; or

"(2) If there be no spouse or minor children or if the spouse or minor children fail to sue within one year after such death, . . . then by the father and mother, . . .

"(3) If there be no husband, wife, minor child or minor children, natural born or adopted as herein indicated, or if the deceased be an unmarried minor and there be no father or mother, then in such case suit may be instituted and recovery had by the administrator or executor of the deceased and the amount recovered shall be distributed according to the laws of descent." Section 537.080. It should also be noted that Section 537.100 provides that: "Every action instituted under section 537.080 shall be commenced within two years after the cause of action shall accrue; . . . ."

Those statutes were amended and reenacted in 1967. The amendments have been described as follows: "There was no change in the basic theory of the Wrongful Death Act. The class of persons who had first priority to sue was changed, the time in which they were permitted to sue was extended to one year, and the maximum period in which any suit could be brought was extended from one year to two years. Therefore, the construction of the Wrongful Death Act prior to the 1967 amendments which resulted in the present Act is applicable to the present Act, subject only to the changes made in the definition of classes and the lengthening of the periods of limitation." *Wessels v. Gipfel,* 522 S.W.2d 653, 656 (Mo.App.1975).

In an early case this court construed the statute in certain respects in a manner which has been followed to this day. The court stated that, "In conferring the right of action, and in providing such remedy, in designating when and by whom suits may be brought, it was, as a matter of course, competent for the legislature to provide and impose such conditions as it might deem proper, and the conditions thus imposed modify and qualify the right of recovery, or form rather, we think, a part of the right itself, and upon which its exercise depends. In the statute which creates the right of action, and in the same section in which the statutory right and remedy is thus con-

ferred upon the husband or wife, it is further provided, by the second subdivision, as we have seen, that if there be no husband or wife, or he or she fails to sue within six months after the death, the right of action therefor shall be vested in the minor children of the deceased, if there be such. This provision is not, we think, merely a limitation or bar to the remedy of the wife, but is a bar to the right itself, if there are minor children, . . . So in the case now before us, where the action is brought by the widow after the expiration of the six months, her right to maintain the same is conditional, and depends on the non-existence of the minor children,—a material and necessary fact, as we think, and which was not alleged or proved. . . . " *Barker v. Hannibal & St. J. R. Co.,* 91 Mo. 86, 14 S.W. 280, 281 (1886).

The wrongful death cases decided by the appellate courts of this state have established certain principles which have been uniformly followed by our courts. They are: (1) The statute provides for one indivisible claim for the death of a person which accrues on the date of death. (2) The claim vests first in the spouse and minor children either jointly or severally. (3) If the deceased left surviving a father or mother the spouse and minor children must exercise their preferred right by filing suit within one year from the date of death. (4) If the spouse and minor children fail to sue within one year the claim passes to and vests in the father and mother or the survivor. (5) If there is no father and/or mother the spouse and minor children have the full two years in which to sue. (6) If there is no spouse or minor children the father and mother may sue at any time within the two year period. (7) The party having the right to enforce the claim has absolute control over it during the period specified and may file suit or settle without suing. (8) There is but one claim for relief and if not enforced by one class during the period specified it passes to another class of beneficiaries. (9) When a claim is appropriated by one preferential beneficiary it completely terminates all rights of any others mentioned in the statute with the exception

that if the person so appropriating dies during the limitation period without having completed enforcement the next alternative claimant may file suit within the two year limitation period, and (10) unless a tolling situation exists the suit must be filed within two years from date of death.

The principles we have set out in the preceding paragraph are supported by the following cases: *Barker v. Hannibal & St. J. R. Co.,* supra, *Wessels v. Gipfel,* supra, *Huss v. Bohrer,* 317 Mo. 204, 295 S.W. 95 (1927), *Cummins v. Kansas City Public Service Co.,* 334 Mo. 672, 66 S.W.2d 920 (1933), *Chandler v. Chicago & A. R. Co.,* 251 Mo. 592, 158 S.W. 35 (1913), *Nelms v. Bright,* 299 S.W.2d 483 (Mo.1957), *Uber v. Missouri Pacific Railroad Company,* 441 S.W.2d 682 (Mo.1969), *State ex rel. v. Kimberlin,* 504 S.W.2d 237 (Mo.App.1973), *Montemayor v. Harvey,* 490 S.W.2d 61 (Mo. 1973), *Forehand v. Hall,* 355 S.W.2d 940 (Mo.1962), *Goldschmidt v. Pevely Dairy Company,* 341 Mo. 982, 111 S.W.2d 1 (1937), and *Spencer v. Bradley,* 351 S.W.2d 202 (Mo.1961). See also, *Click v. Thuron Industries, Inc.,* 475 S.W.2d 715 (Texas 1972) in which the Texas court construed the Missouri statutes and decisions in accord with the foregoing.

Decedent received his fatal injury at a place near the state line between Kansas and Missouri. While there is some uncertainty concerning the state in which he was killed it now appears that all parties have accepted the fact that he was a few feet into the state of Kansas. In an effort to avoid the effect of the foregoing decisions respondent's attorneys have briefed the contention that the Kansas law (particularly Section 60–513, the statute providing that the statute of limitations for wrongful death shall be two years) should apply to this case. We see no merit in that contention.

Ordinarily the wrongful death statute of the state in which the fatal injury occurred would apply. If plaintiffs desired to recover under Kansas law they were required to plead that statute and if they failed to do so

the petition would not state a claim for relief. *Rositzky v. Rositzky*, 329 Mo. 662, 46 S.W.2d 591[12] (1932). However, in this case both sides apparently concluded that under the choice of law rule announced in *Kennedy v. Dixon*, 439 S.W.2d 173 (Mo. 1969) the law of Missouri should apply. Accordingly, plaintiffs obviously relied upon the Missouri statutes in all respects including the amount of damages sought. In fact, they alleged in their petition, "That the laws of the State of Missouri govern and apply to all matters in this cause because the majority of the relevant contacts herein relate to the State of Missouri; that the State of Missouri has the most significant relationship to the occurrence and the parties." Relator in its answer admitted those allegations. Furthermore, at a pretrial conference the parties stipulated, "that the laws of the State of Missouri shall govern and apply in all matters in this cause by reason of the significant and relevant contacts just described, and that the laws of the State of Missouri, including, but not limited to, the statutory recovery and procedure therefor in the event of wrongful death, shall apply." In this connection it should be noted that the Kansas statutes differ in a number of respects from the Missouri wrongful death statute. See K.S.A., Sections 60–1901 to 60–1905 inclusive.

As indicated, the brief of respondent primarily requests that the Kansas two year statute of limitation be applied. This cannot be done because, as heretofore indicated, this case in its entirety is governed by Missouri law.

Moreover, it should be noted that we are not ruling that plaintiffs are barred by the statute of limitation. Our holding is that they are barred because they did not file suit within the period provided for in the wrongful death statute which is an essential element of the claim for relief. In other words the question is—were plaintiffs the proper parties to file and maintain a suit at the time such was commenced? As indicated, this contention is ruled adversely to respondent.

As we have indicated plaintiffs filed a claim under the Kansas Workmen's Compensation Law on November 30, 1970. That claim was finally decided adversely to them on August 9, 1971. It is now contended that the filing of that claim tolled the running of the Missouri statute of limitation and that plaintiffs could file this action within one year after August 9, 1971. Plaintiffs say they could not file a suit in Missouri until the compensation claim was concluded. We do not agree. There was no reason why this case could not have been timely filed in Missouri. There could only be one recovery but both matters could have been pending at the same time.

It should be noted that plaintiffs did not plead the filing of the claim as tolling action and that such is essential in order to state a claim. Moreover, the tolling statute, Section 537.100, refers to Section 537.080 and provides, ". . . that if any such action shall have been commenced within the time prescribed in this section, and the plaintiff therein take or suffer a nonsuit, or after a verdict for him the judgment be arrested, or after a judgment for him the same be reversed on appeal or error, such plaintiff may commence a new action from time to time within one year after such nonsuit suffered or such judgment arrested or reversed; . . ." A somewhat similar contention was made in *King v. Smith Baking Co.*, 228 Mo.App. 721, 71 S.W.2d 115 (1934) and ruled against the plaintiff. In *King* the deceased had filed a claim for compensation for the injuries, which subsequently caused his death, and after his death the claim was unsuccessfully continued to conclusion by his widow. The court in ruling the contention stated that, ". . . it cannot be seriously contended that the complaint for compensation before the Workmen's Compensation Commission, including the proceedings thereinafter had and the appeal by respondent—although the claim might have ripened into a claim for compensation for death, by respondent—was the action contemplated by sections 3262, 3263, and 3264 above mentioned or that the cause of action before the com-

mission was the cause of action provided by said sections. Such contention is necessarily overruled." 71 S.W.2d 118.

The case relied on by respondent is *Slater v. Kansas City Terminal Railway Company,* 271 S.W.2d 581 (Mo.1954) but we consider it clearly distinguishable on the facts. In that case the widow filed a suit within six months but misconceived the nature of her claim and sought to recover as administratrix under the F.E.L.A. This court ruled that since she had filed a timely suit for the death of her husband she should be permitted to amend seeking recovery under the wrongful death statute after the year had elapsed and that such would relate back to the date of filing the original petition.

 We rule that the compensation claim did not toll the operation of the applicable statutes.

Respondent next asserts that the legislature in amending Section 537.080 in 1967 clearly broadened the scope thereof and that the amended Act should therefore be liberally construed. It is stated in the brief that the legislative intent was, ". . . simply to give the surviving wife or husband or minor children *preference* during the first year but not to prevent any of them from maintaining an action any time before the the expiration of the second year provided there be no surviving parents or provided that the surviving parents, if any, have not instituted or are not entitled to institute judicial proceedings. The one-year provision is not a limitation on the right of the persons described in subsection 1 to sue, but rather is a limitation on the *preference* given the persons described in subsection 1 over those persons described in subsection 2. This provision is, therefore, not a limitation on plaintiffs' cause of action and does not bar them from maintaining their action in the instant case."

We see nothing in the wording of the amended Act to warrant a conclusion that the legislative intent was as respondent contends. As stated in *Wessels,* supra, the Act extended the time in which to sue and changed the class given first priority but there was no change in the basic theory of the wrongful death act.

Along the same line respondent says that Section 537.100 is the only limitation statute and that Section 537.080, by use of the permissive word *may,* merely established a preferential order among the classes and therefore plaintiffs had the full two years to commence their suit. He says that, by analogy, *Cummins,* supra, and *Almcrantz v. Carney,* 490 S.W.2d 59 (Mo.1973) support that suggestion. In *Cummins* the widow filed suit within six months and then died shortly thereafter. The court held that, in that situation, the minor children could sue during the second six months since the widow had not been able to pursue the remedy to a conclusion. *Almcrantz* simply followed the well established rule that where no parent survived, the surviving widow had the entire two years in which to sue. We do not think these cases or the wording of the statute support respondent's contention. The 1967 statute used the word *may* in precisely the same manner as the prior statute and hence we see nothing to support a finding of legislative intent to change the law in that respect.

Both sides have discussed *Wessels,* supra, at some length. Relator says it supports its contentions and respondent says it is distinguishable. In that case the decedent, age 24 and unmarried, lived with and supported his widowed mother. After her son's death on October 24, 1971, the mother filed a suit on November 10, 1971, and it was settled and dismissed on April 30, 1973. Probably unknown to the mother decedent was the father of an illegitimate daughter born posthumously May 16, 1972, who filed a wrongful death suit on August 28, 1973. In ruling that the trial court properly dismissed said daughter's petition the court pointed out that the suit was not filed within the first year or even within a year after plaintiff was born. It was further stated that, ". . . the mother of the deceased, prematurely as it turned out, filed suit during the first year following the death of her son. That was the period within which appellant could have, but did

not, appropriate the cause of action. At the termination of the 'one year' referred to in subsection 2 the statute of limitations ran on appellant's cause of action, and the cause of action was subject to appropriation by the mother. Her suit was already pending, and it was her privilege to prosecute it to judgment or to settle pursuant to stipulation." 522 S.W.2d 656. While the facts are not the same as those in the case at bar we think *Wessels* clearly supports relator's contentions.

The final contention of respondent, as stated in his brief, is that, "The parents of the deceased suffered no pecuniary loss or damages as a result of their son's death and could not institute proceedings against Relator within two years of decedent's death. Therefore, under Section 537.080 of the Revised Statutes of Missouri, the Plaintiffs had the right to sue more than one year but less than two years after decedent's death." It has, of course, been relator's contention that since deceased had parents in existence that after the passage of one year the right to sue passed from plaintiffs and vested in the parents. Relator cites cases such as *Wessels* and *Almcrantz* using the words "in existence" in describing that situation. Respondent says that is not an accurate expression. He says a person does not exist within the meaning of the statute, unless he is entitled to sue and recover damages. Respondent points out that the deceased had not contributed to the support of his parents for many years and therefore contends that they suffered no damage by reason of his death and could not maintain a suit. He reasons from that premise that the situation is the same as in *Almcrantz* where deceased had no surviving parents and it was held that the widow could sue any time within two years.

We are unwilling to agree that Roy's parents suffered no damage by reason of his death. It is true, as ruled in our recent case of *Pittock v. Gardner*, 530 S.W.2d 217[5] (Mo.1975), that where the executor sues for the benefit of the collateral heirs he is required to allege and prove that the beneficiaries suffered pecuniary loss. But such is not the case where the statute, such as in subparagraphs (1) and (2) of Section 537.080, grants a right of action directly to certain classes. We are impressed with the view that an adult son, ". . . might be of pecuniary value to his mother in the future, although previously he had contributed nothing at all but had only been an expense to her." *Talbert v. Chicago, R. I. & P. Ry. Co.*, 321 Mo. 1080, 15 S.W.2d 762, 765 (1929). It is not at all unusual for parents to give money to their adult children while the children are endeavoring to get a start in life with the thought that if, in later years, they, the parents, are in need the children will help them. Many parents receive comfort and reassurance from the thought that their child will contribute to their needs if such should ever become necessary. This, however, is not a proper case for a decision as to the amount parents may recover for the wrongful death of adult children and we will not do so. This, because we are convinced that parents, in any event, are entitled to recover nominal damages and that is sufficient to authorize the filing and maintenance of a suit. And that right is sufficient to require a ruling that plaintiffs in the case before us were not entitled to sue after the expiration of one year.

In *Stroud v. Masek*, 262 S.W.2d 47 (Mo. 1953) a widow sued for the wrongful death of her husband and apparently failed to prove pecuniary loss. On appeal this court ruled that she would be entitled to recover nominal damages at least. In that opinion we stated that, " 'According to the general current of American authority, where it appears in a statutory action for death that the death was caused by defendant's negligence, nominal damages may be recovered, although no actual pecuniary damage has been shown.' 25 C.J.S. Death § 96, page 1238.

"The case of *Wente v. Shaver*, 350 Mo. 1143, 169 S.W.2d 947, loc. cit. 954, 145 A.L.R. 1176, was a wrongful death case. In that case we quoted with approval the following quotation in *King v. City of St.*

*Louis,* 250 Mo. 501, loc. cit. 513, 157 S.W. 498, loc. cit. 501:

" ' "The rule is that for every actionable injury there is a corresponding right to damages, and such an injury arises whenever a legal right of plaintiff is violated. 'If there is no inquiry as to actual damages, or none appears on inquiry, the legal implication of damages remains; \* \* \* therefore nominal damages are given.' Suth. on Dam. (3rd Ed.) § 9; 13 Cyc. 14." '

"Judgment for nominal damages is a substantial right since such a judgment decides the incident of costs." 262 S.W.2d 51. See also, *Acton v. Shields,* 386 S.W.2d 363[7] (Mo.1965). It is interesting to note that in cases such as the one before us the approved instructions do not require a finding that plaintiff has suffered damage. See MAI 20.01 and 20.02. This was explained in the case of *Aubuchon v. LaPlant,* 435 S.W.2d 648, 652 (Mo.1968) as follows: "In wrongful death actions, unlike suits for personal injuries, the issue of whether plaintiff has proved pecuniary loss (damages) is not hypothesized in plaintiff's verdict directing instructions. See MAI 20.01 and 20.02. The reason for this, as set out in the Committee's Comment to MAI 20.01, is that nominal damages may be recovered in such a case as this even though actual damage is not sustained."

We recognize that relator will benefit from the failure of plaintiffs to exercise diligence and file their suit within the time specified in the statute and the failure of the parents to sue during the second year. That, of course, is the situation in every case where the claim is barred by statutory limitation. We have concluded, however, that there is no reasonable basis under the statute for granting plaintiffs relief. This is a matter of statutory construction. When the 1967 amendments were enacted the legislature is presumed to have been familiar with the long line of cases which have held that the persons named in the wrongful death statute must exercise the right so granted within the time and manner fixed by the statute or recovery will be denied. In reenacting that statute (Section 537.080) the legislature did not include any provision therein which indicated an intent to change the rule in those cases. Accordingly, we would deem it imprudent to overrule that long line of cases in order to hold that plaintiffs could maintain their action under the circumstances heretofore detailed.

It follows that the provisional rule should be made absolute.

MORGAN, HENLEY, FINCH, and DONNELLY, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed.

SEILER, C. J., dissents and concurs in separate dissenting opinion of BARDGETT, J.

BARDGETT, Judge (dissenting).

I respectfully dissent. This is prohibition and was filed here to prevent respondent circuit judge from proceeding with the trial of a wrongful death action. The death action was instituted by a widow and three minor children for damages resulting from the death of Roy Ruiz, the husband of the widow and father of the minor children, against relator Kansas City Stock Yards Company of Maine (Stockyards). Stockyards was the employer of Roy Ruiz who was killed while working for Stockyards on June 12, 1970. In addition to the widow and minor children, deceased was survived by his mother and father.

In due course, the widow filed a claim under the Kansas Workmen's Compensation law against Stockyards. Stockyards denied it had elected to come under the Kansas Workmen's Compensation law and also denied that it was engaged in one of the hazardous employments listed in the act which is mandatorily covered by that act. Hearings were held in March and May 1971, and on June 8, 1971, the hearing examiner found that Stockyards had not elected to come under the Kansas Workmen's Compensation law and that Stockyards' business was not one of those which is mandatorily covered as hazardous and, on that basis

alone, denied the claim. Claimant filed for review of the examiner's determination to the director of the division of workmen's compensation. On August 12, 1971, the director affirmed the examiner's determination denying the claim. By this time more than one year had passed since the death of Roy Ruiz.

On May 25, 1972, the widow and minor children filed their suit for wrongful death in the circuit court of Jackson County, Missouri, against Stockyards. This, of course, was more than one year after the death of Roy Ruiz but was within two years of that death.

Stockyards contends that the widow and minor children cannot maintain the wrongful death claim under the Missouri wrongful death statute, sec. 537.080, because, in addition to a widow and minor children, deceased was survived by his mother and father and therefore the widow and minor children had only one year to institute suit.

In the circuit court action for wrongful death, Stockyards stipulated in stipulation # 10 that the parents of the deceased "received no money or support of any kind from Roy Ruiz between 1945 and June 12, 1970 [date of deceased's death]" and in stipulation # 11 stipulated that the deceased's parents "sustained no pecuniary loss as a result of the death of Roy Ruiz . . . ." The parties also stipulated that the widow filed a claim for workmen's compensation against Stockyards in accordance with the Workmen's Compensation law of Kansas on the basis that the death arose out of the course of Roy Ruiz's employment with Stockyards; that hearings were held thereon; that on June 10, 1971, the examiner denied the claim; that claimant filed her request for director's review and on August 9, 1971, the director sustained the denial of the compensation claim.

As noted supra, the claim was not denied on its merits but on the grounds that Stockyards had not accepted the Kansas Workmen's Compensation law and that the business of Stockyards was not hazardous as defined in the Kansas Workmen's Compensation law and, therefore the Kansas Workmen's Compensation law was not mandatorily applicable.

The principal opinion does not say in so many words that the Missouri wrongful death act must be strictly construed because it created a right of action nonexistent at common law, yet, that is the theory that pervades many of the earlier cases cited therein. Although at common law there was no right of action denominated a wrongful death action, I am somewhat impressed by the fact that in 1853, two years before the first wrongful death statute was enacted in Missouri, this court in *James v. Christy,* 18 Mo. 162 (1853), upheld the right of a father to sue for the loss of services of his fifteen-year-old son who was negligently killed by another. That case came here on the question of whether the father's cause of action survived to the father's personal representative or died with the father. This court held, 18 Mo. at 164:

By our law, the father has a property in the services of his son during his minority, and whilst he is under his guardianship. If, by the misconduct of another, he is deprived of these services, or the son is disabled from performing them, the law awards him a compensation in damages. The measure of damages, in such cases, is governed by the circumstances, which will be weighed by the jury. This controversy involves the construction of the twenty-fifth section of the second article of the act concerning executors and administrators. That section formerly underwent a discussion in this court, in the case of *Higgins v. Breen,* 9 Mo.Rep. 497. That case settles the principles which will govern this. It was there held, that the statute extends to all acts by which personal property is lessened in value. Here, the father was entirely deprived of all property in his son's services. The recovery will be limited to the actual value of the services, as they may be ascertained by a jury. The administrator will not be entitled to any remuneration for the loss of the society or comforts afforded by a child to his parent. Damages of this character died with the par-

ent, and his estate is entitled to compensation, only so far as it has been lessened by the loss of the son's services. The father was no longer entitled to those services than during his life. Had the son been alive, on the death of his father, his services would not have belonged to his estate, but would have been due to the individual who succeeded him in the relation of parent, or would have belonged to himself.

The other judges content, the judgment will be reversed and the cause remanded.

Now I cite the *James v. Christy* case in order to show that the supreme court of this state was cognizant of the loss to a parent occasioned by the death of his minor son and, as is seen from the quotation supra, the father was in 1853 allowed to recover for at least the same items of loss that the subsequently enacted wrongful death statute allowed. And so, *James v. Christy*, although not called a wrongful death action, was an action by which the father could recover what is now compensatory wrongful death damages. Additionally, it might be noted that the damages to the father in *James v. Christy* included loss of society and comfort and there was no limitation on the amount. Although courts of this and other states have repetitively said there was no action for wrongful death prior to the enactment of death damage statutes, the fact is that in Missouri there was a cause of action available, at least to the parent when the minor child was negligently killed, for loss of services during minority and the other damages spoken of in *James v. Christy, supra.*

What is also rather striking about the opinion in *James v. Christy, supra,* is that it simply states the situation as it existed in and prior to 1853. In other words, here were judges of this court who had practiced law in Missouri and by their experience knew what was going on at that time simply reciting that this type of suit was then being entertained in courts of this state. I can hardly believe that the judges of this court would have acknowledged the existence of such a cause of action unless it did actually exist.

It may be speculative to guess at what the courts would have held with respect to the right to sue for pecuniary losses occasioned by the death of a parent or spouse had wrongful death statutes not been enacted, but it seems clear that by 1853 this state was well on the way to allowing suits for such damages. However, courts of this state were relieved of the task of deciding those questions because two years later in 1855 the legislature enacted a wrongful death statute which, in effect, mooted the question, and thereafter courts could adjudicate those matters under statutory law.

In some instances where the legislature did not specifically grant a right to sue where none existed at common law this court has held the right exists. In *Novak v. Kansas City Transit, Inc.,* 365 S.W.2d 539 (Mo. banc 1963), this court held a married woman had a course of action for loss of her husband's services due to injury to the husband and overruled prior decisions to the contrary. In *R___ v. R___,* 431 S.W.2d 152 (Mo.1968), the court held that, although no cause of action existed at common law by an illegitimate child to enforce support from a putative father, such a right must be recognized under the equal protection clause of Amendment Fourteen of the United States Constitution.

In 1917 the general assembly amended sec. 1.010, RSMo 1909, which relates to the common law of England being in force in this state by adding the following, "but no act of the general assembly or law of this state shall be held to be invalid, or limited in its scope or effect by the courts of this state, for the reason that it is in derogation of, or in conflict with, the common law, or with such statutes or acts of parliament; but all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof." In *Almcrantz v. Carney,* 490 S.W.2d 59, 61 (Mo.1973), the principal opinion held sec. 1.010, as amended, applicable to a construction of sec. 537.080, RSMo 1969 (wrongful death statute) and held that

where no parent survived the deceased the plaintiff widow had two years within which to sue. See also *Montemayor v. Harvey*, 490 S.W.2d 61 (Mo.1973).

There is no specific provision in 537.080 which says that if there is no mother or father surviving then the widow or minor children have two years to sue nor that the children after two years can join in the widow's action begun before the two-year statute expired, but the court held this to be proper in *Almcrantz* and *Montemayor* and earlier cases. I agree with these decisions because they give effect to the true intent and meaning of our wrongful death statute which, in my opinion, is that these laws were principally intended to provide a remedy for those persons who naturally suffer the greatest loss by the death of another. Those persons are, in my opinion, the widow and minor children of the man who is killed.

In the instant case, the widow and children seek to maintain this action and they did sue prior to the expiration of the two-year statute, sec. 537.100. There has been no effort by the surviving parents of the deceased to sue or intervene in the pending circuit court case and the two years have expired. Thus, we are not here confronted with a contest as between the widow and minor children on the one hand and the surviving parents on the other as to whom shall be allowed to maintain the action. That issue can be met when it is presented but it is not presented in this case.

In *Almcrantz* and *Montemayor*, I filed concurring opinions in which I stated that, in my opinion, the two-year statute of limitations is the only time limitation available to a defendant, and the priority of the right to sue as set forth in 537.080 is not available to a defendant and does not shorten the two-year statute. Sec. 537.100, RSMo 1969.

The instant case, however, does not require that those views be adopted in order to allow the action to be maintained by the widow and minor children. That specific issue would arise only where there was a contest as between beneficiaries with re-

spect to who can maintain the action and that issue is not in this case.

Insofar as Stockyards is concerned, it is exposed to no more liability in this case than if the parents of the deceased did not survive him and in such circumstances, under the prior decisions, the widow and minor children had two years to sue.

Can it reasonably be said that the legislature intended to absolve a defendant from liability for wrongful death to the surviving widow and minor children merely because a parent of the deceased survived him even though the parent declined to sue and, by the parents' own admission, sustained no pecuniary loss?

I do not believe such a holding to be in accord with sec. 1.010 which requires the laws to be liberally construed so as to effectuate the true intent and meaning thereof and particularly when 1.010 specifically proscribes against a court *limiting the scope* or effect of a statute because the statute is in derogation of the common law. Where, as here, the surviving parents have not sued and have declared that no pecuniary loss was sustained, I believe the court should consider the case the same as one where the parents did not survive the deceased and allow the widow and children the full two years in which to sue rather than to provide the defendant with a windfall derived from a technical construction of the statute which in effect "throws the baby out with the bathwater."

The principal opinion is premised on prior holdings of this court that the cause of action for wrongful death did not exist at common law; that the statute *created* the right and therefore the right to sue was conditioned upon the recipient exercising that right upon the conditions and within the period provided for in the statute granting the right; and that the conditions set forth in the statute with respect to the widow having only one year to sue if the deceased was survived by a parent is not merely a limitation or bar to the remedy of the wife but is a bar to the right itself.

The underpinning for the decisions of the courts of this country which have held that

there was generally no cause of action for wrongful death at common law is the opinion of *Lord Ellenborough in Baker v. Bolton,* 1 Camp. 493, 170 Eng.Rep. 1033 (1808), and its progeny.

Lord Ellenborough stated, "In a *civil court,* the death of a human being could not be complained of as an injury . . . ." (Emphasis mine.) That statement may have been technically correct but, it so, it was only a half truth. The other half is that compensation for death was paid in conjunction with or in substitution for a criminal proceeding. In any event, it was obtainable under the general common law. See "The Genesis of Wrongful Death", 17 Stanford L.Rev. 1043 (1965). This concept was carried over into the colonies. In the Court of Assistants of Massachusetts Bay Colony, one Foster was charged in 1675 with "accidentally discharging gun[s] at foules on ye neck thereby wounding Samuel Fflacks son so as he djed." It was adjudged that he should pay the father of the boy ten pounds. 1 Mass.Ct.Assts. 54–55; 17 Stanford L.Rev., 1063. After reviewing many early cases in which money was awarded to the deceased's family, Professor Malone, the author of "The Genesis of Wrongful Death", concluded. "In conclusion, the writer has discovered no observation in colonial statutes or decisions lending any support to a belief that a death claim would have been denied by our colonial ancestors." 17 Stanford L.Rev. 1065.

When one considers the historical development of death claims under the common law and colonial practice, in my opinion, one cannot help but conclude that the origin of the death damage claim is firmly rooted in the common law and is not merely of statutory origin.

The first decision in the United States to hold there was no action for wrongful death at common law was *Carey v. Berkshire R. R. Co.,* 55 Mass. 475 (1848). It relied totally on *Baker v. Bolton, supra,* to support that conclusion.

In *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), a unanimous United States Supreme

Court overruled *The Harrisburg,* 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886). *The Harrisburg* held that there was no common law action for wrongful death and, interestingly, our case of *James v. Christy, supra,* was cited as being one of the cases in common-law courts which was against that rule. *The Harrisburg* held that the state wrongful death statute created the right of action and the time within which the suit must be brought operates as a limitation on the statutorily created liability itself and not on the remedy alone. Although *Harrisburg* discussed the maritime law, as the death there occurred in a ship collision off the coast of Pennsylvania and Massachusetts, the court based its decision on common law holding that the common law as applied on the land was also applicable to the sea.

As stated, *The Harrisburg* was overruled by *Moragne. Moragne* involved the death of a longshoreman while aboard a ship in the navigable waters within the state of Florida. The maritime law provided no recovery for wrongful death within a state's territorial waters and the Florida court held that the Florida wrongful death act did not allow recovery for unseaworthiness as that concept is understood in maritime law—the result being that there was no statutory grant of right for the maintenance of the action for death damages. The United States Supreme Court in *Moragne* reviewed the history of actions for death. At 398 U.S. 384–385, 90 S.Ct. 1779, the court stated:

The historical justification marshaled for the rule in England never existed in this country. In limited instances American law did adopt a vestige of the felony-merger doctrine, to the effect that a civil action was delayed until after the criminal trial. However, in this country the felony punishment did not include forfeiture of property; therefore, there was nothing, even in those limited instances, to bar a subsequent civil suit. *E. g., Grosso v. Delaware, Lackawanna & West. R. Co.,* 50 N.J.L. 317, 319–320, 13 A. 233, 234 (1888); *Hyatt v. Adams,* 16 Mich. 180, 185–188 (1867); see W. Prosser, Law of

Torts 8, 920–924 (3d ed. 1964). Nevertheless, despite some early cases in which the rule was rejected as "incapable of vindication," e. g., *Sullivan v. Union Pac. R. Co.*, 23 Fed.Cas. pp. 368, 371 (No. 13,599) (C.C.Neb.1874); *Shields v. Yonge*, 15 Ga. 349 (1854); cf. *Cross v. Guthery*, 2 Root 90, 92 (Conn.1794), American courts generally adopted the English rule as the common law of this country as well. Throughout the period of this adoption, culminating in this Court's decision in *Brame* [*Insurance Co. v. Brame*, 95 U.S. 754, 24 L.Ed. 580 (1878)], the courts failed to produce any satisfactory justification for applying the rule in this country.

The court approvingly quoted Mr. Justice Holmes, who, speaking in dissent in *Panama R. Co. v. Rock*, 266 U.S. 209, 45 S.Ct. 58, 69 L.Ed. 250, said (398 U.S. 391, 90 S.Ct.):

(I)t seems to me that courts in dealing with statutes sometimes have been too slow to recognize that statutes even when in terms covering only particular cases may imply a policy different from that of the common law, *and therefore* [the courts] *may exclude a reference to the common law for the purpose of limiting their scope. Johnson v. United States* [5 Cir.], 163 F. 30, 32. Without going into the reasons for the notion that an action (other than an appeal) does not lie for causing the death of a human being, it is enough to say that they have disappeared. The policy that forbade such an action, if it was more profound than the absence of a remedy when a man's body was hanged and his goods confiscated for the felony, has been shown not to be the policy of present law by statutes of the United States and of most if not all of the States.[1] [Emphasis mine.]

The court quoted Dean Pound at 398 U.S. 391–92, 90 S.Ct. "Today we should be thinking of the death statutes as part of the general law", and further stated at 393, 90 S.Ct. at 1783, "However, it is sufficient at this point to conclude, as Mr. Justice Holmes did 45 years ago, that the work of the legislatures has made the allowance of recovery for wrongful death the general rule of American law, and its denial the exception."

On the heels of *Moragne*, the Massachusetts Supreme Judicial Court decided *Gaudette v. Webb*, 362 Mass. 60, 284 N.E.2d 222 (1972), and, in light of *Moragne*, overruled its earlier decision in *Carey v. Berkshire*,

1. The "appeal" referred to was not an appeal as we know it today. "The criminal appeal was a criminal proceeding brought by a private person, and was for many years more common than indictment as a means of punishing homicide. Though a successful appeal would not produce a monetary recovery, the threat of one served as an informal substitute for a civil suit for damages. Over the years, indictment became more common, and the criminal appeal was abolished by statute in 1819. 59 Geo. 3, c. 46. See Holdsworth, The Origin of the Rule in *Baker v. Bolton*, 32 L.Q.Rev. 431, 435 (1916); *Admiralty Commissioners v. S. S. Amerika*, [1917] A.C., at 58–59." 398 U.S. 389, 90 S.Ct. 1782 footnote 7. As stated, appeal as a method of obtaining compensation for death existed at common law and was not done away with until abolished by statute in 1819. 59 Geo. 3, c. 46. The "appeal of murder", the "wer and wite", and "the compromise" were methods whereby the family of the deceased obtained compensation for the death at common law.

COMPROMISE: The compromise produced the same general result as an action for damages. Woodbine, The Origins of the Action of Trespass, 33 Yale L.J. 799, 803 (1924).

WER: "In the old days of *wer* and *bot* the person who slew another, even though it was by misadventure or in self-defence, had been liable *to pay the statutory sums* to the deceased's kin." 3 Holdsworth, A History of English Law, 257–58 (1909).

WITE: "The vengeance of the members of the deceased's clan was bought off by an award of money, the *wer* (or *capitis oestimatio*), the amount of which was fixed in terms of the status or rank of the deceased and which was distributed in definite proportions to his paternal and maternal kin. In the same proceeding there was exacted of the wrongdoer the *wite*, which was a reparation to the King or overlord for the breach of his peace or *mund.*" Malone, The Genesis of Wrongful Death, 17 Stanford L.Rev. 1043, 1055 (July 1965).

APPEAL: The appeal of murdrum was probably used to exact monetary payment from the accused. 2 Holdsworth, A History of English Law 362–64 (3d. ed. 1923); Woodbine, The Origins of the Action of Trespass, 33 Yale L.J. 799, 803–06 (1924).

*supra,* which, as indicated, was the first case in the United States which followed *Baker v. Bolton, supra.* In *Gaudette,* one Joseph Gaudette was killed in an automobile collision on April 15, 1967, and left surviving a widow and minor children. His widow was appointed administratrix of his estate on March 4, 1970. The wrongful death action was filed March 6, 1970. The Massachusetts wrongful death statute of limitations expired on April 15, 1969. If the provisions of the Massachusetts tolling statute with respect to minors applied, then the minors could maintain the action even though the two-year statute had expired. The court noted that Massachusetts "has long subscribed to the rule that there is no common law right to civil recovery for death, and that any right to such recovery is solely a creation of the statutes. As such, the period of limitation appearing in our wrongful death statute has been held to be 'a limitation upon the right as well as upon the remedy, and the right was lost when . . . [the period of limitation] expired.'"

The Massachusetts court then overruled *Carey v. Berkshire, supra,* and the other cases holding there was no common law cause of action for wrongful death and quoted extensively from *Moragne,* saying at 229:

Based upon its view that recovery for wrongful death had now become a part of our common law, the court in the *Moragne* case held that there was a common law right to recovery for wrongful death under general maritime law. The court's decision was founded in large part upon the general prevalence of nonmaritime wrongful death statutes, and it is thus applicable with equal force to nonmaritime actions for wrongful death.

Upon consideration of the *Moragne* decision and the sound reasoning upon which it is based, we are convinced that the law in this Commonwealth has also evolved to the point where it may now be held that the right to recovery for wrongful death is of common law origin, and we so hold. To the extent that *Carey v. Berkshire R. R.,* 1 Cush. 475, and any other prior decisions of this court conflict with our present holding, those decisions are no longer to be followed.

Consequently, our wrongful death statutes will no longer be regarded as "creating the right" to recovery for wrongful death. They will be viewed rather as: . . . (d) *requiring that the action be commenced within the specified period of time, as a limitation upon the remedy and not upon the right.* We further hold that statutes limiting the period for bringing actions for death are to be construed in the same manner as the limitations contained in G.L. c. 260, the general statute of limitations, and that in appropriate cases they may be tolled by the various provisions of G.L. c. 260. [Emphasis mine.]

*Gaudette* did not allow the widow to maintain the action because the two-year statute of limitations had expired prior to suit, but upon its holding that the right to recover for wrongful death was a common law origin the court treated the wrongful statute as one of general law which allowed the general tolling statutes to apply and resulted in the statute of limitations as to wrongful death actions to be tolled as any other limitation statute is tolled. This permitted the minor children to maintain the action even though instituted more than two years after their father's death.

The significance of *Moragne* and *Gaudette* is that, perhaps for the first time, courts of this country have fully recognized that there was a common law origin for death damage recovery, however crude it may have been; that the combined effect of wrongful death statutes having been enacted in all of the states and by the Congress of the United States is to establish beyond a doubt that it is and has been the policy in this country to allow such actions to a point where, as stated in *Moragne,* the courts " 'may exclude a reference to the common law for the purpose of limiting their scope.' " 398 U.S., at 391, 90 S.Ct. at 1782.

I believe the purpose of the 1917 amendment to sec. 1.010 noted supra was to tell

the courts of this state that they should "exclude a reference to the common law for the purpose of limiting their scope." That is really what 1.010 means when it states that " . . . *no act of the general assembly . . . shall be . . . limited in its scope or effect by the courts of this state, for the reason that it is in derogation of, or in conflict with, the common law . . . .*" (Emphasis mine.)

In my opinion, it is time for this court to recognize that compensation for wrongful death, in some form, existed at common law and, therefore, such actions are of common law, and not exclusively statutory, origin.

Whether the court recognizes that compensation for death existed at common law or gives effect to sec. 1.010, as amended 1917, so as not to *limit* the scope of our wrongful death statutes because of alleged conflict with the common law the same result obtains. That result is the two-year statute of limitations found in sec. 537.100, RSMo 1969, becomes the only limitation period which a defendant can interpose so as to bar the remedy. This would, in my opinion, allow the wrongful death statute to be afforded its true intent and purpose and permit the instant widow and minor children to have what the law allows—a cause of action for the damages resulting from the death of the husband and father.

In the instant case there is, in my opinion, another sound reason to allow the action to proceed. Sec. 537.100, RSMo 1969, provides in part, "that if any such action [wrongful death] shall have been commenced within the time prescribed in this section, and the plaintiff therein take or suffer a nonsuit . . . such plaintiff may commence a new action from time to time within one year after such nonsuit suffered or such judgment arrested or reversed; . . . ."

If there were no workmen's compensation law, the instant widow and children could have proceeded to a verdict in a wrongful death action and, in this case, the action would have been against Stockyards, the same defendant against whom the compensation claim was filed for the same wrong—death of Roy Ruiz.

Claims under the workmen's compensation law have been held to constitute a complete substitute for the common law remedies. *Glick v. Ballentine Produce, Incorporated*, 396 S.W.2d 609 (Mo.1965), appeal dismissed 385 U.S. 5, 87 S.Ct. 44, 17 L.Ed.2d 5; *Sheets v. Hill Brothers Distributors, Inc.*, 379 S.W.2d 514 (Mo.1964).

This being so, then the claim filed under the workmen's compensation law should be considered as the action referred to in sec. 537.100, RSMo 1969, because it is a complete *substitute* for the action (wrongful death) provided for therein. "Substitute" simply means "put in place of". Webster's Third International New Dictionary, p. 2280. The workmen's compensation law put the claim under that act in the place of the claim for wrongful death under 537.080, RSMo 1969.

Here the claim was filed under the workmen's compensation law. The claimants could not know whether they would prevail or not until the decision on that claim was handed down. If claimants prevailed then they would have no cause of action in the courts for wrongful death. The award was for Stockyards but not on the merits. It was held that Stockyards had not accepted the workmen's compensation act and that its business was not of the hazardous type mandating acceptance but it took over a year for this to be determined.

Had the widow filed a suit for wrongful death initially and if in that court proceeding it was determined the deceased was an employee and defendant an employer and subject to the workmen's compensation law, and for that reason was nonsuited, the time for filing the claim for workmen's compensation under 287.430 would have been tolled and the widow would have had one additional year from the ultimate determination of the court action to file the workmen's compensation claim. Sec. 287.440, RSMo 1969.

When this section, 287.440, is considered in pari materia with 537.100, it seems clear that the legislature has established a policy to toll the statute of limitations during that period when the same basic claim is pending

in another forum. This, I believe, provides substantial support for holding that the terminology "such action" appearing in 537.100 includes within its scope the substituted claim for death benefits under the workmen's compensation law.

Because the compensation claim involved the same parties as the wrongful death action involves, and because the event giving use to both claims is the same (death of Roy Ruiz), and because the compensation claim is a *substitute* for the wrongful death suit against that same defendant, I believe the provisions of sec. 537.100 allowed the widow and minor children to institute the instant action within one year after they were "nonsuited" on the workmen's compensation claim.

The fact that the tolling statute was not pleaded is not, in my opinion, of any significant moment. In *Lynch v. St. Louis Public Service Co.*, 261 S.W.2d 521 (Mo.App.1953), the administratrix of the deceased's estate filed suit for wrongful death but did not plead "the necessary elements of dependency and pecuniary loss". After verdict and judgment for plaintiff, defendant appealed. The court held the petition jurisdictionally defective and reversed because of the insufficiency of the petition but held that "since the petition may be amended to bring it within the statute relied upon the case should be remanded."

The same is true in the instant case. If pleading the tolling statute is necessary to make the petition sufficient, then leave to do so should be granted.

The instant wrongful death case was filed within one year after the workmen's compensation claim was terminated by a decision not on the merits of the action and therefore should be allowed to proceed. Sec. 537.100, RSMo 1969.

For the foregoing reasons I would quash our preliminary rule in prohibition and therefore I dissent.