Ewell NELSON and Thelma
Nelson, Appellants,

v.

David Grant HALL, Respondent.

No. WD 34469.

Missouri Court of Appeals,
Western District.

June 26, 1984.

As Modified Oct. 30, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Dec. 26, 1984.

Application to Transfer Denied
Feb. 26, 1985.

Robert L. Shirkey, James M. Slone, Kansas City, for appellants.

Paul V. Herbers, James F. Stanley, Happy, Cooling & Herbers, Kansas City, for respondent.

Before PRITCHARD, P.J., TURNAGE, C.J., and SHANGLER, J.

SHANGLER, Judge.

The parents Nelson sued for the wrongful death in Colorado of a minor daughter. The petition alleged that on May 27, 1977, the defendant Hall so negligently operated his motor vehicle on U.S. Interstate 70 near Burlington, Colorado, as to overtake and run into the vehicle occupied by the child, and caused her death. The petition alleged also that at the time of the tortious conduct and consequent casualty, the decedent was a resident of Missouri. The answer of the defendant admitted physical, but transitory, presence in Missouri for five months of 1977, but without the intent to establish local residence or domicile. The petition alleged that Missouri was the sovereignty with the most significant relationships with the occurrence and actors, and on that rationale, asserted recovery under the Missouri Wrongful Death Act [§ 537.080, et seq., RSMo 1978].

The defendant Hall pleaded the effect of the Colorado statute of limitations in bar to the action and the contributory negligence and assumption of the risk by the decedent in defense to the action. The defendant Hall then moved to dismiss for want of subject matter jurisdiction by the court to adjudicate the petition: on the ground that a cause of action for wrongful death was enabled to the plaintiff parents, if at all, by the statutes of the situs of the tortious death—Colorado—and not by the statutes of Missouri as the petition asserted. The trial court sustained the motion and dismissed the petition without prejudice.

The appeal poses: whether a cause of action for wrongful death accrues under the statute of the forum state to the exclusion of the state where the defendant acted to cause death merely because the forum state enjoys the more significant relationships with the occurrence and the litigants.[1]

The traditional doctrine that the *lex loci delicti* applies to determine questions of conflicts of law in tort cases was discarded from our jurisprudence in *Kennedy v. Dixon*, 439 S.W.2d 173 (Mo. banc 1969). The strict principle that all substantive questions were determinable by the law of the state where the tort occurred was supplanted by the more pliant and fair *most significant contacts* standard as promulgated by Restatement (Second) of Conflict of Laws § 145 (1971). That standard gives effect to the general principle of choice of law that [§ 145]:

(1) The rights and liabilities of the parties *with respect to an issue in tort* are determined by the local law of the state which, *with respect to that issue,* has the most significant relationship to the occurrence and the parties under the principles stated in § 6.[2]

(2) Contacts to be taken into account in applying the principles of § 6 to determine *the law applicable to an issue* include:

    (a) the place where the injury occurred,

1. The plaintiffs unwittingly pose the question as an enigma [Appellants' Amended Brief, pp. 5 and 6]: "It must, therefore, be emphasized that the issue raised on this appeal is not one of choice of law, but one of subject matter jurisdiction of a Missouri court over the cause of action as set forth in Plaintiffs' petition. In other words, the issue is whether, under the facts of this case, Plaintiffs' cause of action may be deemed to have accrued under the Missouri wrongful death statute such that Plaintiffs could properly plead that the action was brought under Section 537.080, et seq., RSMo. and the trial court could have jurisdiction over the subject matter of the action on that basis." That poses an antinomy and dilemma, not a defined issue for decision. That is because—as both our discussion shows and as the plaintiffs concede—the Missouri wrongful death statute pretends no extraterritorial effect. It is only by some choice of law rationale that the contention of the plaintiffs enjoys any color. And, in fact, it is that very rationale the petition pleads to invoke the wrongful death remedy of Missouri § 537.080, et seq.

2. The calculus of principles § 6 delineates to come to a choice of law on a given issue does not bear on the question for decision, and so does not require rescript.

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to *the particular issue.* [emphasis added]

The general principle § 145 enunciates: that the rights and liabilities of the parties with respect to an issue in tort are determined by the law of the state with the most significant relationship to the occurrence and parties is iterated in those terms, and applied to the range of defined torts in separate sections [§§ 146 through 155], and also to the statutory action for wrongful death:

§ 175  Right of Action for Death

In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, *with respect to the particular issue,* some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied. [emphasis added]

These general principles of significant relationship, by the very terms, are formulated to determine which law governs the rights and liabilities of the parties as to a particular issue of a tort, and not usually the essential cause of action, itself: that is, whether a tort was committed at all. The general principle § 145 promulgates is recognition that a state other than the *locus delicti* may have a superior interest as to a particular aspect of the cause of action, and *as to that issue* the *lex loci delicti* yields to the tort rule of the state with the more significant relationship to the occurrence

and parties.  Thus, the state where the tort was committed may not be the state with the superior interest in such an issue as the amount of damages a jury may return on the cause of action [Restatement (Second) Conflict of Laws, § 171 (1971); *Carver v. Schafer,* 647 S.W.2d 570 (Mo.App.1983) ], or whether the guest statute shall be given effect in favor of a nonresident host driver and against a nonresident guest passenger [*Kennedy v. Dixon,* 439 S.W.2d 173 (Mo. banc 1969) ], or whether a claim for damages for a tort survives the death of the tort-feasor or of the injured person [Restatement (Second) Conflict of Laws, § 167 (1971) ], or who could sue upon a claim for wrongful death [Restatement (Second) Conflict of Laws, § 179 (1971); *Rotella v. Joseph,* 615 S.W.2d 616 (Mo.App.1981) ].  The general principles of significant relationship, therefore, allow a choice of law on these and other such particular issues of a tort cause of action.

That the choice of law principle § 145 promulgates for general application to actions in tort, and § 146 then addresses to tort actions for personal injury, and § 175 then addresses to actions for wrongful death, usually appertains to *a particular issue* of the cause of action—and only with exception to determine whether the conduct was tortious—is evident from the comments and notes of the reporter:

§ 145  The General Principle

Comment d.  The issue involved

Experience and analysis have shown that certain issues that recur in tort cases are most significantly related to states with which they have particular connections or contacts.  So, for example, a state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there.  Thus, *subject only to rare exceptions,*[3] *the local law of the state*

3.  The "rare exception" to the rule that the local law of the state where the acts took place and injury ensued will determine whether a tort was committed at all may be an instance during an air transportation [*see* § 146, *comment d*] or train transportation [*see* § 145, *comment e*]

from one state to another when the negligence and injury occurred while in passage over or through the territory of intervening state.  In such case, the relationship of the state to the conduct and injury to the parties may be too fortuitous and insubstantial—and in that sense

*where conduct and injury occurred will be applied to determine whether the actor satisfied minimum standards of acceptable conduct and whether the interest affected by the actor's conduct was entitled to legal protection.*

§ 146 Personal Injuries

Reporter's Note

*Comment d: With respect to issues relating to standards of conduct, the local law of the state of conduct and injury has been invariably applied.*

§ 175 Right of Action for Death

Reporter's Note

*The local law of the state of conduct and injury has invariably been applied to determine issues relating to standards of conduct.*

[emphases added]

The precept of § 145 that as a general principle the law of the *locus delicti* governs [to the exclusion of other sovereignty] to define the minimum standard of acceptable conduct of persons within the territory—and hence whether the act which produced the harm was tortious—finds acceptance in court decisions, treatises, and commentaries. *See* Reporter's Note to Comment d § 146 Personal Injuries and Reporter's Note to § 175 Right of Action for Death, Restatement (Second) Conflict of Laws (1971); E. Scoles and P. Hay, Conflict of Laws § 17.1 (Hornbook Series, 1982);[4] W. Reese, Choice of Law in Torts and Contracts and Directions for the Future, 16 Colum.J.Trans.L. 1, 1.c. 13–14 (1977); 1 S.

Speiser, Recovery for Wrongful Death 2d § 13.4, p. 351 (Second Edition 1975).

Our choice of law jurisprudence accepts that rationale as an assumption, albeit not as a question presented for determination and adjudicated under the most significant contacts principle. In *Kennedy v. Dixon,* 439 S.W.2d 173 (Mo. banc 1969), a driver and passenger—both Missouri residents—were enroute to New York and return—when a collision occurred in Indiana. The passenger sued the personal representative of the driver in a Missouri court. The question presented was whether Missouri would give effect to the guest statute of Indiana—the *locus delicti*—to defeat recovery by the plaintiff passenger. The defendant argued the efficacy of the *lex loci delicti* rule, the law then extant. Our Supreme Court en banc, as we note, discarded the traditional doctrine in favor of the Restatement (Second) choice of law principle. In the course of opinion the court gave emphasis that only a particular issue was there for decision:

[1.c. 181]:

"The issue here presented relates only to which law should govern the host-guest relationship and consequently whether the Indiana Guest Statute is applicable."

.    .    .    .    .

[1.c. 182]:

" '*Where the defendant's exercise of due care in the operation of his automobile*

---

"nonterritorial"—so that the general principles of § 145 and the calculus of significant relationships of § 6 appertain to determine the culpability of the conduct and the issue of a protectible interest. The predisposition of general principle § 145 [*see* comment d] that, subject to rare exception, the law of the locus of the conduct and injury determines culpability or not, colors §§ 156–160. These sections delineate the choice of law principles to determine whether the conduct of the actor was tortious [§ 156], and the subsumed components—the standard of care to judge the conduct [§ 157], the interest entitled to legal protection [§ 158], the duty owed plaintiff [§ 159], and the question whether the conduct was the legal cause of the injury [§ 160]. Each of these determinations, in turn, are reverted to § 145, and hence to the qualification of *comment d,* that the interest of state where

the conduct and injury occur predominates to determine whether the actor committed a tort.

4. E. Scoles and P. Hays [with allusion to the W. Reese law review compendium cited in the opinion and with reference to another preeminent authority, R. Leflar, American Conflicts Law (Third edition) ], concludes: "[W]ith respect to the question whether the defendant's conduct was tortious, the 'applicable law will, almost surely, be that of the state where the defendant acted if either (a) this law would [so] hold the conduct, or (b) the plaintiff's injury also occurred in the state.' " We note that Restatement (Second) § 145 requires the more stringent conjunction of *both acts and injury* within the state to preempt the determination of tortious conduct to the *locus delicti.*

*is in issue, the jurisdiction in which the allegedly wrongful conduct occurred will usually have a predominant, if not exclusive, concern.* In such a case, it is appropriate to look to the law of the place of the tort so as to give effect to that jurisdiction's interest in regulating conduct within its borders, and *it would be almost unthinkable to seek the applicable rule in the law of some other place.'*"

.       .       .       .       .

[1.c. 185]:

"In a factual situation such as is here presented, a Missouri passenger, starting from Missouri on a trip with a Missouri host, should have a right of recovery if injured by negligence of his or her host regardless of where on that trip the negligence occurs. *The question of negligence, as the various cases have indicated, should be determined by the law of the state where the tort occurs because that is the state with the dominant interest concerning that issue . . . .*"
[emphasis added]

The theme that the interest of the state of occurrence predominates under evolved Restatement (Second) principles of choice of law to determine whether conduct committed within its bournes constitutes a tort repeats in *Griggs v. Riley,* 489 S.W.2d 469 (Mo.App.1972). The particular choice of law issue, as in *Kennedy v. Dixon,* was the application of the guest statute of the *locus delicti* [Illinois] or that of policy of the forum state [Missouri] to compensate victims of negligent drivers on the local highways. The court determined that the most significant relations of the parties *as to that particular issue* under the Restatement (Second) standard was with Missouri and refused effect to the Illinois guest statute to defeat recovery. The court in *Griggs v. Riley* defined the premises of the choice of law inquiry [1.c. 471[1]]:

The issue we are dealing with here is the relationship of the parties, and the liability to suit of the defendant, as a result of that relationship. *It should be empha-*

*sized that as was true in Kennedy the substantive law of the place where the accident occurred is to be applied in determining whether defendant's actions constituted a tort sufficient to permit recovery by plaintiff.* [emphasis added]

The petition invokes choice of law principles, not to ameliorate a rule or policy of Colorado [the state of occurrence, injury and death] on *a particular issue of the cause of action*—such as an expired statute of limitations, a restricted recovery of damages, a local defense, a right to maintain the cause of action, or a guest statute or other immunity to suit—but to enable a wrongful death action on the Colorado occurrence in the Missouri court *as a cause of action for wrongful death accrued under Missouri wrongful death §§ 537.080 and 537.090.* In effect, the plaintiffs assert the extraterritorial effect of the Missouri wrongful death statutory cause of action under choice of law principles.

The rule that a statute enjoys no extraterritorial effect beyond the state of enactment remains the principle of our adjudicated decisions. *Rositzky v. Rositzky,* 329 Mo. 662, 46 S.W.2d 591, 594[5–7] (Mo.1931). At common law death gave rise to no cause of action and terminated any cause of action for a personal tort already accrued. Prosser, Law of Torts § 126 (4th ed. 1971). An action for wrongful death, therefore, accrues—if at all—only by a legislative enactment, and then as a new and different cause than that for the injury from which death resulted. *Cummins v. Kansas City Public Service,* 334 Mo. 672, 66 S.W.2d 920[1–3] (banc 1933). These premises yield the necessary corollary that a wrongful death cause of action enjoys no extraterritorial effect. Thus, it is the law of the place of the fatal injury which determines whether a death action can be maintained [*Rositzky,* supra, 1.c. 594]:

"An action based on the statutory law of another state must accrue there and can only be maintained in this state when so authorized by the law of this state, and in such cases the courts of this state

enforce the laws of the other state as there written and interpreted."

Another authority gives the usual principle in summary [R. Leflar, American Conflicts Law § 139 (1959)]:

"[N]o cause of action for wrongful death exists save as it was created by the law of the place where the tort occurred, and it is the cause of action there created which must be sued upon at any place where action is brought."

Our civil procedure [Rule 52.03(a)] prescribes that "[w]henever a claim exists under the law of another state, a civil action thereon may be brought in this state...." The plaintiffs steadfastly refuse that overture, and even shun to assert the Colorado death statute as a basis for recovery—a decorum which preconditions the sufficiency of the pleading and hence jurisdiction to adjudicate. The plaintiffs contend that these prescriptions of the *Rositzky* era of adjudications are now superseded by the choice of law principles established in *Kennedy v. Dixon* and most recently applied to actions for wrongful death in *State ex rel. Broglin v. Nangle*, 510 S.W.2d 699 (Mo. banc 1974) and *State ex rel. Kansas City Stock Yards Company of Maine v. Clark*, 536 S.W.2d 142 (Mo. banc 1976). They argue that the *Rositzky* rationale that the Missouri wrongful death statute does not operate beyond the territory of the state represents the now discredited *vested rights* direction in choice of law determinations, a precept no longer compatible with the most significant relationship standard now in effect. They conclude that the forum which enjoys the most significant relationship with the occurrence and litigants may under our precedents apply its internal law to grant remedy for wrongful death—that is as a cause of action accrued under the law of the state of the forum state, here Missouri, even though the occurrence and death were in another state.

In *State ex rel. Broglin v. Nangle*, 510 S.W.2d 699 (Mo. banc 1974), the question the plaintiffs present to us was considered by the court, but refused as not necessary to decision. An action for wrongful death was on review to the court of appeals. The casualty occurred in Texas and the decedent, a Missouri resident, was survived by a widow, also a Missouri resident, among others. Two choice of law issues were presented to the court: whether the Texas or Missouri law applied to the distribution of damages, and which law governed the amount of damages recoverable. The transfer of the court of appeals opinion to the supreme court was prompted by a dissent to the implication of the majority that a Missouri court could entertain a wrongful death action under the local law for a death occasioned by conduct in another state— here, Texas. The supreme court observed: [*Broglin, supra*, 1.c. 701]:

We consider first the concern ... that the majority opinion of the Court of Appeals had assumed that relator had a choice of preceeding under the wrongful death statutes of either Texas or Missouri insofar as her basic cause of action was concerned. We agree that the proposed opinion did make such an assumption without deciding whether or not the relevant statutes of Missouri could be given extraterritorial effect to create a cause of action for alleged negligent conduct in Texas. The parties agree that historically Missouri has not given such effect to a statutory cause of action. For instance, as said in *Rositzky v. Rositzky*, 329 Mo. 662, 46 S.W.2d 591, 1.c. 593[2] (1931):

"[A]ctions for damages on account of the death of any person are strictly of statutory origin, and exist and can be maintained only when there is a statute in force at the time and *place of the injury* creating and giving to the person suing such right of action." ... For at least two reasons, this opinion need not be extended by giving consideration to whether or not such historical precedents are still valid. First, the restatement approach to resolution of interstate problems does not purport to create causes of action where none existed. The "Introduction" to the restatement of "Conflict of Laws 2d" at page 32 states that: "The range of application of a statute, ques-

tions of jurisdiction aside, involves a problem of statutory construction and is beyond the scope of the Restatement of this Subject." Second, the railroad does not contend that relator's cause of action did arise under the statutes of Missouri, but, to the contrary, concedes that it arose, if at all, under the statutes of Texas....

■ The range of application of a statute [as *Broglin*, 1.c. 701, observes] continues to be beyond the pale of the choice of law principles the Restatement (Second) promulgates and we now apply, and remains a function of construction by the courts. The solution the plaintiffs propose, however, does not involve a new construction of the wrongful death statute, but a discard of common law assumptions, now outmoded by our adoption of the Restatement (Second) choice of law principles, formerly used to determine the effect of out-of-state facts on the substantive law of a cause of action before the forum. The text, comments and notes in the Restatement (Second) §§ 145, 146, 175 and several others—as our discussion shows—impress the general rule, *subject only to rare exceptions*, the local law of the state where conduct and injury occur will apply to determine "whether the actor satisfied minimum standards of acceptable conduct and whether the interest affected by the actor's conduct was entitled to legal protection." Comment d to § 145. The Restatement (Second) does allow for exception—as it must, if the accommodation of multi-state interests in conflict is to be principled. [*See* Appendix note 3]. The exception is allowed even in a case of wrongful death, invariably an exclusively statutory cause of action. [*See* 1 S. Speiser, Recovery for Wrongful Death 2d § 1:13 (Second edition 1975).] Thus, the Restatement (Second) Conflict of Laws, comments:

§ 175  Right of Action for Death

Comment e: When conduct and injury occur in same state.

In the majority of instances, the actor's conduct, which may consist either of action or nonaction and the resulting injury will occur in the same state. In such instances, the local law of this state will usually be applied to determine most issues involving the tort ... Situations will, however, arise where, although conduct and injury occur in the same state, some other state is that of most significant relationship and therefore the state of the applicable law *even with respect to such issues, as those discussed in §§ 156–166 and 172, which would usually be determined by the local law of the state of conduct and injury....*

Thus, the Restatement recognizes that on occasion some state other than the place of the conduct and death may enjoy the most significant relationship to the occurrence and the parties, in which event the law of *that* state will apply to determine whether the conduct and death—albeit done and inflicted beyond its territory—was tortious and the interest invaded entitled to legal protection [§ 156 et seq.].

This qualification to the usual rule augurs—as numerous commentators note—that under Restatement principles "in a proper case the forum may apply its own wrongful death statute, rather than that of the place of the wrong, as the basis of liability." Kay, *Comments on Reich v. Purcell,* 15 U.C.L.A.L.Rev. 584, 586 (1968). In *Farber v. Smolack,* 20 N.Y.2d 198, 282 N.Y.S.2d 248, 229 N.E.2d 36 (1967) New York, that early, adjudicated the choice of law rule [1.c. 282 N.Y.S.2d 253, 229 N.E.2d 40]: "[W]hen a fatal accident occurs out of State and New York is, as here, the jurisdiction having 'the most significant relationship' with the issue presented ... our wrongful death statute determines the rights of the victim's survivors.... To the extent that earlier decisions declined to give extraterritorial effect to the statute, they are overruled." [5] That judicial attitude may reflect the insistent reality that

5. That peremptory rule has since been tempered by a decisional selectiveness more nearly in accord with Restatement principles. *See Neu-* *meier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), e.g.

the remedy for wrongful death, available in every separate state, has by now become part of our general law, and poses no more impediment to extraterritorial application than any other tort cause of action. *See Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 393, 90 S.Ct. 1772, 1783, 26 L.Ed.2d 339 (1970); *Gaudette v. Webb*, 362 Mass. 60, 284 N.E.2d 222 (1972); 1 S. Speiser, Recovery for Wrongful Death §§ 1:13, 2:1, et seq., (Second ed. 1975).

*State ex rel. Kansas City Stock Yards Company of Maine v. Clark*, 536 S.W.2d 142 (Mo. banc 1976) stands as ostensible precedent that Missouri, under the Restatement choice of law principles, will apply its wrongful death statute extraterritorially in exceptional circumstances. The question for decision was the effect of the statute of limitations on the claim of the widow and minor children for the wrongful death and which law applied—Kansas or Missouri—on that issue. In that case the act which produced the injury and death was committed in the stockyard area, concededly "a few feet into the state of Kansas" across the state line from Missouri. The situs of conduct, injury and death notwithstanding, the pleading of the litigants concurred that under the Restatement choice of law rule the law of Missouri should apply. The court concluded that the Missouri limitations barred the claim and denied the petition. The opinion reasoned [1.c. 145]:

> Ordinarily the wrongful death statute of the state in which the fatal injury occurred would apply … However, in this case both sides apparently concluded that under the choice of law rule announced in *Kennedy v. Dixon*, 439 S.W.2d 173 (Mo.1969) the law of Missouri should apply … Furthermore, at a pre-trial conference the parties stipulated, *"that the laws of the State of Missouri shall govern and apply in all matters in this cause by reason of the significant and relevant contacts* just described, and that the laws of the State of Missouri, including, but not limited to, the statutory recovery and procedure therefor in the event of wrongful death, shall apply." In this connection it should be

noted that the Kansas statutes differ in a number of respects from the Missouri wrongful death statute … As indicated, the brief of respondent primarily requests that the Kansas two-year statute of limitations be applied. This cannot be done because, as heretofore indicated, *this case in its entirety is governed by Missouri law.* [emphasis added]

The opinion acknowledged [1.c. 145[9–11]] that under the traditional *Rositzky* rule, the petition was not justiciable as a wrongful death cause of action under the law of Kansas—even though the antecedent conduct and the death occurred there—because the plaintiffs did not plead the statute of that state. The usual consequence for such a lapse under *Rositzky* is dismissal of the petition for failure to state a cause of action. *Rositzky*, of course, stands for much more: that the failure to plead the wrongful death statute of the state of occurrence deprives a Missouri forum of any jurisdiction to adjudicate the subject matter of wrongful death. That rests on the common law premise [*Rositzky*, 1.c. 593[2] ]:

> *"[A]ctions for damages on account of the death of any person* are strictly of statutory origin, and *exist and can be maintained only when there is a statute in force at the time and place of the injury creating and giving to the person suing such right of action."* [emphasis added]

██ The stricture in *Rositzky* that only a statute pleaded can suffice to prove the existence of a foreign enactment on which the cause of action rests, however, no longer governs. That rule was grounded on then extant § 806, RSMo 1929, that a court take judicial notice of a public statute of another state where "the pleading states that the law of another state is relied upon." In contemporary practice, of course, a court takes judicial notice of a foreign statute where the pleading informs "that the law of another state is relied upon *or contains allegations which show that the law of another state must be*

*applied."* Rule 55.21(b) [emphasis added]; *Robinson v. Gaines,* 331 S.W.2d 653, 655[2–4] (Mo.1960). A litigant may also induce the judicial notice of a foreign statute by any other means which imparts to the adversary reasonable notice of that purpose. § 490.110, RSMo 1978; *Valleroy v. Southern Railway Company,* 403 S.W.2d 553, 556[3] (Mo.1966). The rule in *Rosiztky,* therefore, reformulates into: where a cause of action exists by virtue of a foreign statute [as for wrongful death], the existence of the statute [and hence the statement of a justiciable claim] may be shown to the court by a pleading, or by other reasonable notice that the litigant relies upon the law of that other state or that such law necessarily appertains to decide the cause of action.

*Rositzky,* in any event, was irrelevant to the decision in *Kansas City Stock Yards.* The court en banc there dealt not with a claim for recovery under a foreign statute, but adjudicated the petition *as a cause of action accrued under the Missouri wrongful death statute.* The court concurred with the litigants that the State of Missouri enjoyed the most significant relationship to the occurrence and death *on all issues*—the question whether the death was wrongful included—under the Restatement (Second) choice of law rule adopted into our jurisprudence by *Kennedy v. Dixon,* supra.

The decision in *Kansas City Stock Yards,* however, is altogether compatible with the Restatement (Second) § 175 Right of Action for Death rationale, as well as the rationale for tort actions in general [§ 145], that in exceptional cases, a law other than that of the state of occurrence and injury [or death] will have the most significant relationship and so will apply to determine whether the conduct was tortious. The text of the opinion does not detail the factual basis for the Missouri choice of law to determine the wrongful death event in Kansas—no doubt, because the issue, after intense analysis and discussion among counsel and the court, was no longer contested. The record of the trial proceedings [retrieved from the archives]

discloses the stipulation and agreement between the litigants that, among other facts, at the time of the occurrence and death: (1) the plaintiffs-survivors were Missouri domiciliaries; (2) the decedent was a Missouri domiciliary; (3) the defendant Stock Yards had as its principal place of business in Kansas City, Missouri; (4) the decedent was employed by the Stock Yards as a labor foreman; (5) the place of work—the Stock Yards premises—straddled the state line, between Kansas and Missouri; (6) the decedent reported to work regularly on the Missouri side of the premises; and (7) the work of the decedent involved movement throughout the Stock Yards every day, both on the Kansas and on the Missouri sides of the state line. The record of the proceedings also shows that on pretrial conference, counsel for the litigants argued to the court the effect of the *Kennedy v. Dixon* choice of law principles on the stipulated facts, and after intensive discussion and analysis, there was concurrence that under the *Kennedy v. Dixon* most significant relationship precedent, the law of Missouri controlled as to all issues—even as to the accrual of a cause of action.

The basis for the trial court decision—and that of the Supreme Court en banc—to apply the law of Missouri rather than that of Kansas to determine whether the occurrence and death in Kansas constituted a wrongful death under Missouri law, therefore, was that the contacts between the parties and the forum state Missouri were so predominant as to supervene even the usual interest of the state of occurrence to regulate conduct within its borders. Restatement (Second) § 175 (1971) Right of Action for Death, as well as the General (Tort) Principle § 145, foresees that possibility and makes provision for such "rare exceptions." [*See* Appendix note 3]. It is evident from the trial record in *Kansas City Stock Yards* that the employment activity of the labor foreman at any given time of the day took him to Missouri or Kansas so that his location, should injury or death befall, would be entirely adventitious. That the decedent was killed in Kan-

sas rather than in Missouri, then, was entirely fortuitous. Thus, Kansas could claim no more interest to regulate the conduct which brought on the death than could Missouri. In this exceptional circumstance of equipoise of interest between the two states, the basic question of liability—or whether a cause of action accrued at all from the conduct—is determined by the law of the state with the most significant relationship to the parties. *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 70[6], 286 N.E.2d 454 (1972).

We conclude that our Supreme Court en banc has given effect to the Restatement (Second) choice of law principles to apply the Missouri wrongful death statute as the basis to determine liability for a death occasioned in Kansas.

■ The plaintiffs here, however, may not claim the benefit of that authority. The petition [and exhibits in support] assert only the collision on a Colorado highway between the vehicle operated by the defendant and the vehicle occupied by the decedent as a passenger, and that all the principals at that time—the plaintiff-parents, the defendant and the decedent—were residents of Missouri. The petition asserts no unusual circumstance to supervene the basic tenet of choice of law that where both the occurrence and injury [or death] conjoin to happen in the same state, the law of that sovereignty will apply to determine whether the actor complied with the minimum standards of acceptable conduct or was tortious. *Kennedy v. Dixon,* supra, l.c. 181; *Griggs v. Riley,* supra, l.c. 471; W. Reese, 16 Colum.J.Transnat'l L. 1, 12 (1977). The presence of the principals on the Colorado highway was not the fortuitous, moment-to-moment movement between two state lines as in *Kansas City Stock Yards,* but a purposeful use of the Colorado facility. The plaintiffs give no reason why the standard of conduct Colorado imposed on persons employed in that

activity should not govern their rights and liabilities. They give no reason how that law disadvantages them. They do not contend that the Missouri law of damages favors a claimant more than does the Colorado wrongful death statute and, so, for that reason should apply to advance the interest of the state of domicile of the decedent and the suitors to full compensation [as in *Carver v. Schafer,* 647 S.W.2d 570 (Mo.App.1983)]; or that the Colorado law allows a defendant an immunity to recovery inimical to the basic policy of the Missouri domicile and forum [as in *Kennedy v. Dixon,* 439 S.W.2d 173 (Mo. banc 1969)]; or that the law of Colorado disallows the plaintiffs as suitors for the remedy [*see State ex rel. Broglin v. Nangle,* 510 S.W.2d 699 (Mo. banc 1974)]—and so *as to any such particular issue* the law of the domicile of the parties enjoys the most significant relationship and should apply. The plaintiffs insist, rather, that the law of the domicile of the parties, Missouri, governs to determine whether a cause of action accrued at all from the conduct and casualty on the Colorado highway. They do not contend that Colorado does not afford remedy.[6]

The insistence of the plaintiffs that the Missouri wrongful death remedy apply to the Colorado occurrence and casualty rests on the premise, simply, that the contacts of Missouri with the occurrence and parties are numerically superior to those of Colorado. That is: that the operators of the two vehicles, the decedent, and the plaintiffs-survivors are all Missouri domiciliaries, and that the only interest Colorado can claim to determine the cause of action is the incidence of the occurrence there. The choice of law analysis the Restatement (Second) promulgates and our jurisprudence adopts weighs not a tally of contacts *simpliciter,* but "their relative importance with respect to the particular issue" [§ 145]—according to the principles stated in Restatement (Second) § 6. *Kennedy v. Dixon,* supra,

---

6. Neither the petition nor the brief of plaintiffs-appellants [nor the answer or brief of the defendant-respondent, for that matter] refers to the Colorado statute by citation or for legal effect. The plaintiffs insistently refuse to say why they seek to avoid the operation of the Colorado wrongful death remedy.

1.c. 181; *Broglin v. Nangle,* supra, 1.c. 702; *Carver v. Schafer,* supra, 1.c. 576. Thus, it is not the number of contacts which determines the choice of law but which state—when those contacts are considered in the perspective of Restatement (Second) § 6 choice of law principles [among them: the needs of the interstate system, the relevant policies of the forum, the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue]—has the most significant relationship to the occurrence and parties, and so is entitled to have its law determine the particular issue. This method involves an accommodation of state interests in conflict, and not an accession to a perfunctory comparison of numbers of contacts. The choice of law derives from "precisely formulating the issue presented, determining which states have legitimate interests in that issue, identifying each of those interests, deciding which state's interests are paramount, and applying the dipositive law of that state to resolve the specific issue presented." Seidelson, *The Wrongful Death Action,* 10 Duq.L.Rev. 525, 526 (1972). *See also* Restatement (Second) Conflict of Laws, § 5 Nature and Development of Conflict of Laws, comment d *Underlying Policies* (1971); *State ex rel. Broglin v. Nangle,* supra, 1.c. 702[1]; *Carver v. Schafer,* supra, 1.c. 576[7].

The plaintiffs plead that the child was killed as the result of negligent operation by the defendant of his motor vehicle on the Colorado highway. Whether that conduct was tortious—in the absence of an exceptional circumstance—depends upon whether the defendant failed to meet the standard of care imposed by Colorado. *Kennedy v. Dixon,* supra, 1.c. 182; *Griggs v. Riley,* supra, 1.c. 471[1]; Restatement (Second) § 145, *comment d;* § 146, Reporter's Note, *comment d;* § 175, Reporter's Note (1971).[7] The plaintiffs neither plead, nor argue, nor assert, nor even intimate any circumstance which invokes a governmental interest of Missouri so cogent as to entitle its law to supervene that of Colorado to determine whether a cause of action for wrongful death occurred on account of the highway conduct.

■ The petition, however, does allege a death by negligence on the Colorado highway, and so informs that the law of that state necessarily applies to the adjudication of the petition—and thus, by the express direction of Rule 55.21(b) invokes judicial notice of that public law. The petition, therefore, states a cause of action for wrongful death under the Colorado statute, and the dismissal was erroneous. That dismissal without prejudice is set aside, and the petition is ordered reinstated. On remand, the plaintiffs may amend the pleading to assert that as to any particular issue—such as damages, or other—the state of Missouri enjoys the most significant contacts and relationship with the occurrence and the parties and therefore should deter-

---

7. The case law discloses one decision, aberrant from the otherwise uniform recognition that—except in the most unusual circumstances [*see State ex rel. Kansas City Stock Yards Company of Maine v. Clark,* supra, and § 145 of the Restatement (Second) of Conflict of Laws (1971)] the law of the situs determines whether or not a cause of action for wrongful death accrues. *Malone v. Jackson,* 652 S.W.2d 170 (Mo.App. 1983) was a claim for the wrongful death of a Missouri resident on the Tennessee highways. The suit was in Missouri and the question was whether the Tennessee one-year statute of limitations applied or the three-year Missouri statute. The court responded:

"Respondents have never contended that it was improper for appellants to proceed under the Missouri Wrongful Death Statute, and a review of the record clearly establishes the statute's applicability in this case under the 'most significant relationship test' of *Kennedy v. Dixon,* 439 S.W.2d 173 (Mo. banc 1969). *See* Restatement (Second) of Conflicts of Laws § 145 (1971)."

Thus, the response was to a question never asked—that is, whether the Missouri wrongful death statute invested the cause of action—and so was dictum. The decision has no support in either authority cited—*Kennedy v. Dixon,* supra, or in § 145 of the Restatement. These sources preclude resort to choice of law principles to create a cause of action. Rather, whether a defendant acted in violation of due care, and so gave rise to a cause of action in favor of a plaintiff is determined by the law of the situs.

mine that issue. The rest depends upon a sufficient proof.

The judgment of dismissal of the petition without prejudice is set aside, the cause is remanded with directions that the petition be reinstated.

TURNAGE, C.J., concurs.

PRITCHARD, P.J., concurs in separate concurring opinion filed.

PRITCHARD, Presiding Judge, concurring in result.

The original opinion in this case affirmed the dismissal of appellants' action for the wrongful death of their 15 year old daughter which was alleged to have occurred as a result of respondent's negligence in running into the rear of the vehicle in which decedent was riding on I–70 near Burlington, Colorado. On the receipt of the motion for rehearing, as to the original opinion this writer changed his concurrence to a dissent, and the opinion was thereafter modified to its present form setting the judgment of dismissal aside and remanding the case with directions that the petition be reinstated.

This is a simple case of the application of the fact pleading requirements of Rule 55.-21(b), which the petition adequately does, and to permit appellants to pursue their transitory tort action in this state under the choice of law precepts of *Kennedy v. Dixon,* 439 S.W.2d 173 (Mo. banc 1969). It is my view that appellants have adequately pleaded facts showing that the choice of law of this state governs their cause. On trial, the court may employ judicial notice to inform itself of Colorado statutes on the limitation of the amount of recovery (§ 13–21–203, Colo.R.S.) for the comparison with § 537.090, RSMo 1978, which has no limitation on the amount of recovery for wrongful death. See and compare *Carver v. Shafer,* 647 S.W.2d 570, 577 (Mo.App. 1983). I do not agree with the suggestion in the modified opinion that appellants might amend the pleading to assert that as to any particular issue—such as damages, or other—the State of Missouri enjoys the

most significant contacts and relationship with the occurrence and the parties. The pleading is sufficient in those respects for a determination, and there is no necessity for an amendment. For that reason, I concur in the result of the modified opinion only.