Jeremy C. SNEAD and Johnna M. Snead, Minors, by Their Mother and Next Friend, Deborah SNEAD, Appellants,

v.

Joshua D. CORDES, a Minor, By His Mother and Next Friend, Terri GOLDING and Eileen Cordes, Respondents,

and

Zephyr Transport, Inc. and Richard W. Carey and Harco National Insurance Company, Respondents.

No. WD 43537.

Missouri Court of Appeals, Western District.

April 23, 1991.

Rehearing Denied May 28, 1991.

James Kent Emison, Lexington, William Douglas Stilley, Raytown, for appellants.

Jay David DeHardt, Kansas City, for Joshua D. Cordes.

Robert W. Blesch, Kansas City, for Zephyr Transport and Richard W. Carey, et al.

Before SHANGLER, P.J., and KENNEDY and FENNER, JJ.

FENNER, Judge.

Appellants, Jeremy C. Snead (Jeremy) and Johnna Megan Snead (Megan), by their mother and next friend, Deborah Snead, appeal the trial court's judgment entry and settlement in relation to the wrongful death of Daniel J. Cordes. Jeremy and Megan allege that they were the illegitimate minor children of Daniel Cordes and that they were not given notice and an opportunity to be heard in the wrongful death and apportionment hearing in regard to the death of Daniel Cordes.

Daniel Cordes died from injuries received in an automobile accident on October 19, 1987, in Franklin County, Kansas. The automobile in which Daniel Cordes was a passenger was struck from the rear by a tractor trailer truck owned and operated by respondent, Zephyr Transport, Inc. Respondent, Richard Carey was the driver of the truck and respondent, Harco National Insurance Company, provided insurance coverage to Zephyr Transport.

Shortly after Daniel Cordes' death, his adoptive mother, Eileen Cordes, and his former wife, Terri Golding, on behalf of Joshua Cordes, the natural son of Terri Golding and Daniel Cordes, retained counsel to pursue a wrongful death claim. On May 26, 1989, Eileen Cordes and Joshua Cordes, a minor, by his mother and next friend Terri Golding, filed an Application for Approval By Court of Proposed Wrongful Death Settlement and For Authority to Execute Release (Settlement Application) in regard to the death of Daniel Cordes. On June 13, 1989, a hearing was held on the application.

A structured settlement was approved on June 13, 1989, for the total value of $398,-980.00, with a current value of $225,000.00. The settlement provided for the payment in cash at the time of settlement of $30,000.00 to Eileen Cordes and $10,000.00 to Terri Golding on behalf of Joshua. Periodic payments were to be made to Joshua Cordes beginning October 12, 1994, and ending October 12, 2006. The plaintiffs' attorneys were to be paid an attorney's fee in the amount of $75,000.00.

At the time the application for approval of settlement was filed, Eileen Cordes knew that Deborah Snead claimed that Jeremy and Megan were the illegitimate children of Daniel Cordes. Nonetheless, they were not given notice of the proceeding and no attempt to give notice was made. At the time of the hearing herein, Eileen Cordes testified that she was establishing a trust fund for a child, William J. Cordes, who was a step-son of Daniel Cordes, but that Joshua Cordes was the only natural child of Daniel Cordes.

Deborah Snead, the mother of Jeremy and Megan, represented that she did not learn of the settlement until October of 1989 when she heard about it from a friend of one of her neighbors. On April 9, 1990, appellants filed a Motion for Relief of Judgment Entry and Order Approving Settlement and Release (Motion to Vacate), seeking to vacate the judgment entry and order entered by the trial court on June 13, 1989, approving the Settlement Application. Appellants represented that the judgment had been obtained by mistake, inadvertence, fraud, misrepresentation, misconduct or irregularity and sought leave to intervene.

Appellants' Motion to Vacate was taken up and evidence heard on May 22 and May 30, 1990, and the motion was taken under advisement. On June 14, 1990, the court overruled the Motion to Vacate.

In its Order of June 14, 1990, the court found that Eileen Cordes was aware of the claim of Jeremy and Megan when the action was first filed and that she failed to notify the court of their identity, but that this was not fatal to the conclusiveness of the judgment. The court further found that based on the evidence heard in relation to appellant's Motion to Vacate that Daniel Cordes was not the father of Jeremy and Megan.

In their first point, appellants argue that the trial court erred in overruling their Motion to Vacate because the respondents failed to satisfy the requirements of § 537.-

095, RSMo 1986 [1], requiring that they diligently attempt to notify all parties having a cause of action under § 537.080. On this point respondents argue that since the accident in which Daniel Cordes was fatally injured occurred in Kansas, that § 537.080 is of no effect because Kansas Law applies. It is respondents' position that under Kansas Law appellants are not among the class entitled to bring a wrongful death action.

Ordinarily, the wrongful death statute of a state in which a fatal injury occurs is applicable. *State ex rel. Kansas City Stock Yards Company of Maine v. Clark*, 536 S.W.2d 142, 145 (Mo. banc 1976). In a wrongful death action, a petition which alleges the fatal injuries occurred in a foreign state is sufficient to invoke judicial notice of the foreign state's law and state a cause of action under the foreign state's wrongful death statute. *Nelson v. Hall*, 684 S.W.2d 350, 360 (Mo. App.1984). However, the parties to a wrongful death action may request or stipulate by pleading or otherwise that the law of the state where the fatal injuries occurred is not to be applied either in its entirety or in part. Any such stipulation controls. *State ex rel. Kansas City Stock Yards Company of Maine v. Clark*, 536 S.W.2d at 146. Any request to apply the law of another state that is not agreed between the parties is to be determined on the basis of exceptional circumstances which show that a state other than that where the fatal injury occurred, enjoys the most significant contacts and relationship with the occurrence and the parties. *Nelson v. Hall*, 684 S.W.2d at 359–60.

The Settlement Application in the case at bar was filed on behalf of Joshua Cordes, by his mother and next friend Terri Golding, and Eileen Cordes as plaintiffs against Zephyr Transport, Inc., Richard Carey and Harco National Insurance Company as defendants. The Settlement Application sought the court's approval of the settlement agreement between the parties to the action "pursuant to the provisions of Sections 507.110 and 537.080, et seq., R.S.Mo. (1986)." There was no response filed by the defendants. Defendants appeared by counsel at the settlement hearing on June 13, 1989, and voiced no objection to the Settlement Application. Furthermore, at the settlement hearing Terri Golding testified that Joshua was a claimant under Missouri law. Terri Golding also stated that it was her understanding that if she were to file suit, she would have to bring suit in Kansas which would mean that Kansas law would control at least as to the amount of proceeds that would have been recoverable.[2] She stated that knowing all this she wished the court to approve the Settlement Application.

The question of whether Terri Golding would have had to file suit in a contested proceeding in Kansas is only of concern here as her statement in this regard, taken with her other statements and her Settlement Application, indicates her desire and belief that Missouri law be applied to her Settlement Application. The record reflects not only a desire by the plaintiffs below, Joshua Cordes by Terri Golding, and Eileen Cordes, to be bound by Missouri law, but also, acquiescence thereto by the defendants, Zephyr Transport, Inc., Richard Carey and Harco National Insurance Company.

Missouri law is applicable to the proposed settlement herein.

Section 537.080 provides that the class of persons first entitled to bring an action for wrongful death is the "spouse or children, natural or adopted, legitimate or illegitimate, or ... the father or mother of the deceased, natural or adoptive." Section 537.095.1 provides in pertinent part that if two or more persons are entitled to sue for wrongful death, then any one or more of them are entitled to settle the claim without joinder of additional parties, provided the claimant has satisfied the court that he

---

1. All statutory references are to RSMo 1986, unless otherwise specifically stated.

2. Under Kansas Law damages, other than pecuniary loss, cannot exceed in the aggregate $100,- 000 in a wrongful death action. § 60–1903, K.S.A.1989 Supp. There is no such dollar limitation under Missouri law. § 537.090.

has diligently attempted to notify all parties having a cause of action under § 537.-080.

In its order, pursuant to appellant's Motion to Vacate, the trial court found that Eileen Cordes was aware of Deborah Snead's claim that Jeremy and Megan were the illegitimate children of Daniel Cordes, prior to approval of the settlement herein, and yet, did not provide them with notice. The court found that Jeremy and Megan should have been given notice, but that failure to do so was not fatal to the conclusiveness of the claim. The trial court apparently based its finding upon its determination, pursuant to hearing on appellants' Motion to Vacate that Jeremy and Megan were not the illegitimate children of Daniel Cordes.

■■■■ The language of § 537.095.1 requiring a diligent attempt to provide notice to all parties having a cause of action under § 537.080 is mandatory and requisite to any settlement approval. *Davis v. Wilson,* 804 S.W.2d 392 (WD Mo.App.1991). Any settlement approved without notice to parties known to claim to be among the class entitled to bring an action for wrongful death is subject to being set aside under the terms of Rule 74.06(b). *Id.*

Rule 74.06(b) provides that a final judgment may be set aside for the following reasons:

(1) Mistake, inadvertence, surprise or excusable neglect;
(2) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;
(3) The judgment is irregular;
(4) The judgment is void; or
(5) The judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force.

■■■■ The court erred by refusing to set aside its order approving settlement when the court found that Eileen Cordes knew at the time the action was first filed that Jeremy and Megan claimed to be the illegitimate children of Daniel Cordes, but no notice of the action was provided to Jeremy and Megan. Failure to give notice was, at a minimum, by mistake or inadvertence under the circumstances herein. Jeremy and Megan are entitled to intervene and seek a determination of paternity.

■■■■ Appellants further argue that it was error for the trial court to make a determination of paternity pursuant to their Motion to Vacate without allowing them the right to a jury trial on the question. Appellants argue that Missouri's Uniform Parentage Act (UPA), §§ 210.817 through 210.852, RSMo Supp.1990, effective July 15, 1987, is applicable to the question of paternity here.

Prior to the enactment of the UPA, a declaratory judgment action under § 527.-010 was recognized as the proper format for a paternity action. *K.D.R. v. D.E.S.,* 637 S.W.2d 691 (Mo. banc 1982). However, § 210.850, RSMo Supp.1990, now provides that the provisions of the UPA are to be applied and construed with the purpose of making uniform the law in respect to paternity. Furthermore, it is an established rule of statutory construction that the provisions of a specific statute prevail over a general one. *State ex rel. Burlington Northern Railroad Company v. Forder,* 787 S.W.2d 725, 726–727 (Mo. banc 1990); *State ex rel. City of Springfield v. Crouch,* 687 S.W.2d 639, 641 (Mo.App. 1985).

The UPA specifically provides that a paternity action can be joined by separate document with an action for dissolution of marriage, annulment, separate maintenance, support, custody or visitation. § 210.829.1. Damages for wrongful death include loss of support. § 537.090. Additionally, the question of paternity was recognized as being properly joined in a wrongful death action prior to the adoption of the UPA. *Aversman v. Danner,* 616 S.W.2d 117 (Mo.App.1981).

■■■■ The question of paternity was not properly before the court pursuant to appellants' Motion to Vacate. The Motion

to Vacate merely presented the question of whether the settlement should be set aside for lack of notice. Once it was determined that Eileen Cordes knew, prior to approval of the settlement, that Jeremy and Megan claimed to be the illegitimate children of Daniel Cordes, the appellants were entitled to have the settlement set aside. The proposed settlement should be held in abeyance until the paternity issue is resolved. Furthermore, any determination of paternity herein must be in accordance with the terms of the UPA.

The judgment of the trial court is reversed. The court's order approving settlement is set aside and this cause is remanded for further proceedings consistent with this opinion.

All concur.