Linda OLSON, individually, as personal representative of the estate of Eric Olson, Sr., and as natural mother and next friend of Eric Olson, Jr., a minor, Jodi Olson and Joshua Olson, Appellants,

v.

The EMPIRE DISTRICT ELECTRIC COMPANY, Respondent.

No. 22894.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 9, 2000.

Application for Transfer to Supreme Court Denied March 2, 2000.

Application for Transfer Denied April 25, 2000.

Daniel F. Church, Douglas M. Greenwald, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for appellants.

Gary C. Lentz, Jason J. Higdon, Spencer, Scott & Dwyer, P.C., Joplin, for respondent.

CROW, Presiding Judge.

The dispositive issue in this appeal is whether a Missouri trial court correctly ruled that the Kansas Land and Water Recreational Areas Act[1] applied in a suit arising from a boating catastrophe on a body of water in Kansas. Discussion of that issue requires an introduction of five people and a corporation.

Eric Olson, Sr. ("Eric Sr.").

Linda Olson ("Linda"). Wife of Eric Sr.

Jodi (Olson) Kundysek ("Jodi"). Adult daughter of Eric Sr. and Linda.

Joshua Olson ("Joshua"). Adult son of Eric Sr. and Linda.

Eric Olson, Jr. ("Eric Jr."). Minor son of Eric Sr. and Linda.

1. In *Nichols v. Unified School District. No. 400*, 246 Kan. 93, 785 P.2d 986, 987 (1990), the Supreme Court of Kansas referred to K.S.A. 58–3201 to 58–3207 as the Land and Water Recreational Areas Act. The legislation was originally enacted in 1965. The version in force when the incident occurred that gave rise to this suit was the version in Kansas Statutes Annotated 1994, except two sections amended effective April 27, 1995. Those two appear in the 1998 cumulative supplement. In this opinion, "K.S.A." refers to the 1994 version of Kansas Statutes Annotated; "K.S.A. 1998 Supp." refers to the 1998 cumulative supplement to K.S.A.

The Empire District Electric Company ("Empire"). A Kansas corporation authorized to conduct business in Missouri. Empire's principal place of business is in Jasper County, Missouri.

At all times pertinent herein, Eric Sr., Linda, Jodi, Joshua and Eric Jr. were residents of Jasper County, Missouri.

On May 28, 1995, Empire owned and operated a dam ("the dam") on a body of water ("the lake") in Cherokee County, Kansas.

On that day, Eric Sr., Linda, Jodi, Joshua and Eric Jr. traveled by motor vehicle from Jasper County to the lake. Eric Sr., Linda and Jodi launched a motorboat into the lake at a "boat launch" near the dam. The trio entered the boat. Immediately thereafter, the boat was pulled by high water and swift current into the dam where it capsized, throwing the three occupants into the lake.

Eric Sr. died as a result of injuries he sustained in the incident.

Linda, Jodi, Joshua and Eric Jr. (by his next friend, Linda) filed a three-count petition against Empire in the Circuit Court of Jasper County. Count I was a claim by all four plaintiffs for wrongful death of Eric Sr. Count II was a claim by Linda for personal injuries she allegedly sustained in the incident. Count III was a claim by Jodi for personal injuries she allegedly sustained in the incident.

The theory of liability against Empire was that it "failed to warn, advise or instruct plaintiffs that the doors on its dam were open, that the current or undertow near the dam was fast and dangerous because of operation of the dam and/or high water conditions, and that boaters entering the body of water from the subject boat launch were subject to great risk of personal injury from being pulled into and through the dam." The petition also pled: "[Empire] failed to prohibit boaters from entering the body of water at the subject boat launch despite the great risk of personal injury from being pulled into and through the dam. [Empire] further failed to advise or recommend to boaters that they not enter the body of water at the subject boat launch or near the dam."

As an affirmative defense, Empire's answer cited "Kansas Statutes 58–3203 and 58–3204." [2]

Empire ultimately moved for summary judgment, maintaining that under the Kansas Land and Water Recreational Areas Act, an owner of land who permits any person to use such property for recreational purposes incurs no liability for any injury to such person caused by an act or omission of the owner. In support of that averment, Empire cited "K.S.A. 58–3204(c)."

K.S.A. 1998 Supp. 58–3204 [3] reads:

"Except as specifically recognized by or provided in K.S.A. 58–3206, and amendments thereto, an owner of land who either directly or indirectly invites or permits any person to use such property, or any part of such property, for recreational purposes or an owner of nonagricultural land who either directly or indirectly invites or permits without charge any person to use such property, or any part of such property, for recreational purposes does not thereby:

(a) Extend any assurance that the premises are safe for any purpose.

(b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(c) Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons."

2. Those statutes are components of the Kansas Land and Water Recreational Areas Act identified in footnote 1, *supra*.

3. As reported in footnote 1, *supra*, two sections of the Kansas Land and Water Recreational Areas Act were amended effective April 27, 1995. Section 58–3204 is one of the two.

K.S.A. 58–3206 (referred to in K.S.A. 1998 Supp. 58–3204, quoted above) reads, in pertinent part:

"Nothing in this act limits in any way any liability which otherwise exists: (a) For willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity. . . ."

Empire insisted that the statutes quoted above entitled it to summary judgment because the plaintiffs' petition "fails to allege any act or omission by [Empire] that was willful or malicious, and therefore fails to allege any act which would violate the Kansas [Land and Water Recreational Areas Act]."

The plaintiffs responded to Empire's motion for summary judgment by telling the trial court that "Missouri substantive law applies" to the incident of May 28, 1995, and that under Missouri law "a genuine issue of material fact exists regarding [Empire's] conduct on May 28, 1995, thereby making summary judgment inappropriate[.]"

The trial court granted Empire's motion for summary judgment and entered judgment for Empire and against the plaintiffs on all counts of their petition.

The plaintiffs ("Appellants") bring this appeal from that judgment. The first of their two points relied on reads:

"In granting [Empire] summary judgment, the trial court erred in holding that Kansas substantive law would govern plaintiffs' personal injury and wrongful death action where all plaintiffs were Missouri residents who had traveled from Missouri to Kansas for a boating outing and where [Empire] was a resident of, and present in, Missouri which also was where [Empire] was served with process on its registered agent."

This is not the first time a Missouri court has had to decide whether to apply Missouri law or the law of another state to an action by one Missouri resident against another Missouri resident arising from an incident in the other state.

In *Kennedy v. Dixon*, 439 S.W.2d 173 (Mo. banc 1969), a Missouri resident (Kennedy) accompanied four other Missouri residents on an automobile journey from Missouri to New York. *Id.* at 175. On the return trip, the automobile was involved in a "head-on collision" with a "tractor-trailer unit" in Indiana. *Id.* The driver of the automobile was killed. Kennedy sued the administrator of the driver's estate (Dixon) for injuries Kennedy allegedly sustained in the collision. *Id.* at 174.

Indiana had a "guest statute" providing, *inter alia*, that the operator of a motor vehicle is not liable for injuries to a guest being transported without payment therefor in the vehicle unless such injuries are caused by wanton or willful misconduct of the operator. *Id.* at 175. Missouri had no such statute. *Id.*

The trial court held the Indiana statute applied, hence Kennedy could recover only if (a) she was a "fare-paying passenger" or (b) her injuries were caused by wanton or willful misconduct of the driver. *Id.* at 175–76. The jury returned a verdict for Kennedy, and the trial court entered judgment thereon. *Id.* at 176.

On appeal by Dixon, the Supreme Court of Missouri held the evidence insufficient to support a verdict for Kennedy on either of the theories in the preceding paragraph. *Id.* at 176–79. The Supreme Court then addressed the issue of whether the trial court erred in ruling that the Indiana "guest statute" applied. *Id.* at 179–80.

After a comprehensive and scholarly analysis that need not be repeated here, the Supreme Court adopted § 145 of the Proposed Official Draft of the Restatement (Second) on Conflict of Laws. *Id.* at 180–84. Section 145 is set forth in the opinion, *id.* at 181, and not recopied here.

Applying § 145, the Supreme Court declared: "The question of negligence . . . should be determined by the law of the state where the tort occurs because that is

the state with the dominant interest concerning that issue[.]" *Id.* at 185. However, as to Indiana's "guest statute," the opinion proclaimed:

"No interest of [Indiana] would be served by applying its guest law for the purpose of determining the host-guest relationship between these Missouri parties. On the other hand, Missouri has a real interest therein. The parties are residents of Missouri, made arrangements for the trip in Missouri, and traveled in a car licensed and garaged in Missouri. The whole relationship of the parties is centered in Missouri. Our General Assembly has not adopted a guest statute to restrict the right of recovery by a guest from his host, thereby indicating that Missouri has a decided interest in having Missouri citizens who ride as passengers protected from negligent injury by Missouri hosts. Missouri has a greater concern than any other state in the relationships between its citizens. In a factual situation such as is here presented, a Missouri passenger, starting from Missouri on a trip with a Missouri host, should have a right of recovery if injured by negligence of his or her host regardless of where on that trip the negligence occurs."

*Id.* at 185.

In sum, *Kennedy* held Indiana law applied in determining whether the driver was negligent, but once negligence was established under Indiana law, Missouri law instead of the Indiana "guest statute" applied in determining whether the Missouri passenger could recover from the deceased Missouri driver's administrator. The judgment was reversed and the case remanded for retrial on liability only. *Id.* at 186.

In *Nelson v. Hall,* 684 S.W.2d 350 (Mo. App. W.D.1984), a minor resident of Missouri was killed in an automobile collision in Colorado. *Id.* at 351. The minor's parents filed a wrongful death suit against the driver of the vehicle that collided with the one occupied by the minor. *Id.* The opin-

ion noted that the general rule, subject only to rare exceptions, is that the law of the state where the conduct and injury occur will apply to determine whether the actor satisfied minimum standards of acceptable conduct and whether the interest affected by the actor's conduct was entitled to legal protection. *Id.* at 356[1]. Accordingly, the court held that whether the defendant's conduct was tortious—in the absence of an exceptional circumstance—depended on whether he failed to meet the standard of care imposed by Colorado. *Id.* at 360.

In *Hicks v. Graves Truck Lines, Inc.,* 707 S.W.2d 439 (Mo.App. W.D.1986), an automobile and a truck collided in Kansas. *Id.* at 441. The automobile was owned by a Missouri resident and driven by his wife, a Missouri resident. *Id.* The truck was owned by a Kansas corporation licensed to do business in Missouri. *Id.* The truck driver was a Missouri resident. *Id.* The automobile owner and automobile driver sued the truck owner and truck driver for damage to the automobile; the truck driver counterclaimed for personal injuries. *Id.* The jury found the automobile driver sixty percent at fault and the truck driver forty percent. *Id.* The trial court applied Kansas law on apportionment of fault, which resulted in no award of damages to the automobile owner. *Id.* He and the automobile driver appealed. *Id.*

The opinion said:

"The preeminent point presented for decision is posed by appellants' contention that the trial court erred in applying Kansas law of apportionment of fault. The Kansas law prescribed by statute differs from Missouri law of apportionment of fault as declared in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983), in that the Missouri rule allows a negligent claimant to recover proportionate damages even though his fault may be greater than that of the other party. Applied to the present case where the jury found [the automobile owner's] property damages to have

been $12,250.00, under Missouri apportionment of fault, [he] recovers $4,900.00 whereas under Kansas law he is not entitled to any damages."

*Id.* at 442.

The opinion then reviewed *Kennedy,* 439 S.W.2d at 173, to ascertain whether the effect of the negligence of the automobile driver on the automobile owner's claim against the truck owner and truck driver should be determined under Kansas law or Missouri law. *Hicks,* 707 S.W.2d at 442–45. The court concluded Missouri law applied to that issue. *Id.* at 445. However, the opinion went on to say:

"There is no disagreement among the parties as to the proposition that the duty of care imposed on the respective drivers involved in this Kansas accident is that provided by Kansas law. The 'rules of conduct' to be hypothesized in the instructions are controlled by Kansas law."

*Id.*

■ The common thread from *Kennedy,* 439 S.W.2d at 185, through *Nelson,* 684 S.W.2d at 360, and *Hicks,* 707 S.W.2d at 445, is that in determining whether acts or omissions in another state are tortious, thereby giving rise to a claim by a Missouri resident against the alleged tortfeasor, a Missouri court applies the standards of conduct of the state where the alleged tort occurs. *Accord: Harter v. Ozark–Kenworth, Inc.,* 904 S.W.2d 317 (Mo.App. W.D.1995), where the plaintiff was injured in Arkansas. The opinion stated: "[T]he rights and liabilities of the parties are governed by the substantive law of Arkansas, which is the place where both the injury and the conduct causing the injury occurred[.]" *Id.* at 320[4].

Appellants cite no case where a Missouri court applied Missouri law in determining whether conduct occurring in another state was tortious, thereby giving rise to a cause of action by a Missouri resident.

As explained in *Kennedy,* 439 S.W.2d at 184, § 145 of the Proposed Official Draft of the Restatement (Second) on Conflict of Laws provides that the rights and liabilities of the parties *with respect to an issue in tort* are determined by the local law of the state which, *as to that issue,* has the most significant relationship to the occurrence and the parties.

K.S.A. 58–3201, the first section of the Kansas Land and Water Recreational Areas Act, reads:

"The purpose of this act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes."

The above-quoted section clearly manifests a public policy—adopted by Kansas in 1965[4]—that the public interest is served if landowners make their land and water areas available to the public for recreational use. To encourage landowners to do so, Kansas chose to shield them from liability to recreational users except for willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity. K.S.A. 58–3206(a).

Kansas's public policy would be thwarted if an owner of Kansas property who is sued in Missouri by a recreational user domiciled in Missouri were held liable under Missouri law when such landowner would be immune from liability under Kansas law. The result of such a holding would be that an owner of Kansas property would owe a greater duty of protection to a Missouri resident who entered Kansas to use the property for recreation than the owner would owe a Kansas resident who used the property for that purpose. Such a scenario is patently absurd.

■ Applying the "most significant relationship" test adopted in *Kennedy,* 439 S.W.2d at 184, this court holds Kansas has the most significant relationship to *the issue of whether Empire's conduct of May*

---

**4.** Footnote 1, *supra.*

*28, 1995* (as pled in Appellants' petition) *rendered Empire liable to Appellants in tort,* as the alleged conduct occurred in Kansas while Eric Sr., Linda and Jodi were using property there for recreational purposes. Accordingly, this court holds the trial court was correct in applying the Kansas Land and Water Recreational Areas Act in adjudicating Empire's motion for summary judgment. Appellants' first point is denied.

Appellants concede they have no cause of action against Empire if the standards governing Empire's conduct are those in the Kansas Land and Water Recreational Areas Act.[5] That concession renders Appellants' second point moot.[6]

Judgment affirmed.

PARRISH and SHRUM, JJ., concur.

---

**5.** The argument following Appellants' first point admits: "[Appellants] are unable to recover damages from [Empire] if the Kansas Recreational Use statute governs their tort claims because they cannot prove 'willful or malicious' intent to injure."

**6.** Appellants' second point reads:

"In granting [Empire] summary judgment, the trial court erred because under applicable Missouri law, specifically the Recreational Use Act, RSMO. 537.345, et seq., genuine issues of material fact remain regarding [Empire's] duty and breach of duty relating to the maintenance and operation of [Empire's] dam on the date of plaintiffs' boating accident."